WILLIAM DEBTH v. THE STATE.

No. 4121.    Decided June 14, 1916.

**1.—Keeping a Disorderly House—Sufficiency of the Evidence.**

Where, upon trial of keeping a disorderly house for the purpose of prostitution, the evidence was sufficient to support the conviction there was no reversible error.

**2.—Same—Objections to Charge of Court—Practice on Appeal—Misdemeanor.**

In order to have the case reversed, exceptions must be taken at the time of the trial and before the charge is read to the jury if it be a felony, and the same rule has been held to apply to misdemeanors, as under the statute before

it was amended with reference to the time of taking exceptions to the charge, unless the error is fundamental. Following Basquez v. State, 56 Texas Crim. Rep., 329.

### 3.—Same—Invited Error—Charge of Court.

Where the charge of the court was not excepted to before the same was read to the jury, and a similar charge was requested by the defendant which invited the error, if error, there was no reversible error.

### 4.—Same—Swearing Witness—Rule Stated.

Where a witness who is not sworn is permitted without objection to testify on a trial, it is too late, in the motion for new trial to raise this question, and where the record did not show that the witnesses were or were not sworn, this matter could not be reviewed on appeal. Following Goldsmith v. State, 32 Texas Crim. Rep., 112, and other cases.

### 5.—Same—Evidence—Sworn Statement of Witness—Affidavit.

Where, previous to the trial, the parties agreed that the testimony of a certain witness should be taken and sworn to and that the same should be admitted in evidence on the trial of the case, objections to the affidavit and said testimony on the ground that the defendant was not confronted with the witnesses, etc., is untenable, as this was not the reproduction of testimony, and, besides, no exceptions were taken to the introduction of said testimony at the time it was introduced in evidence.

Appeal from the County Court of Bexar. Tried below before the Hon. Nelson Lytle.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

*Chambers & Watson,* for appellant.—Upon question of witnesses not being sworn: Thompson v. State, 37 Texas, 121; Bell v. State, 2 Texas Crim. App., 215; Ogden v. State, 58 S. W. Rep., 1018.

On question of insufficiency of the evidence: Novy v. State, 138 S. W. Rep., 139; Hext v. State, 48 Texas Crim. Rep., 576; Peacock v. State, 52 id., 432.

On question of confronting witnesses and affidavit: Hays v. State, 164 S. W. Rep., 841; Grant v. State, 148 S. W. Rep., 760; Betts v. State, 144 S. W. Rep., 677.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted under the second count of the information charging him with directly keeping and being concerned in keeping, and aiding and assisting in keeping a disorderly house, etc., where men and women met by mutual appointment and by appointment made by another for the purpose of sexual intercourse.

The evidence shows that defendant had married a woman named Belle Cook, whom he had known some time prior to their marriage, and that he was living with her at the alleged disorderly house, and was in charge of the house as shown by the witnesses. Appellant testified in

his own behalf, and stated that he had never rented a room either to Virginia Carothers or McMullen; that he was unaware that men and women met at his house for immoral purposes, but he knew that men and women frequently came there without baggage, and sometimes would stay all night, and sometimes only an hour or two and go away; that he was a machinist himself, but since his marriage to Belle Cook had not worked at his trade; that he was managing her property, which consisted of a house back of the Menger Hotel, the alleged disorderly house, and fifteen acres of land; that he had no income on which to live except what he received from this property, and that his wife lived off the income from the same property; that he had known her two or three years before their marriage, and had lived with her since, making seven or eight years in all; that he had been at her place a number of times before he married her, but did not know what business she was in, and did not know whether she kept a disorderly house or not. Appellant introduced Ella Jones, a white woman, who was housekeeper for Belle Cook, wife of the defendant. This woman testified that she did no scrubbing nor washed dishes, but did the housework, and that men and women often came there together, and sometimes would stay all night; sometimes only a short while, and that they never brought any baggage, and were not required to register, and that no register was kept for such purpose; that there was only one regular roomer in the house. That she knew Virginia Carothers, who had formerly lived in a house of prostitution, where witness also stayed for a while. That Virginia Carothers was a sporting woman, and that said house was like the one occupied by the defendant; that Belle Cook and her husband, the defendant, were at their house on many occasions when rooms were rented, and she had seen them on some occasions talking to the parties renting the room, and that defendant and his wife lived there at the time alleged in the information, and had the care, custody and control of said place, and were there the night of the raid by the officers. Two of the detectives testified as well as two policemen, that they were with the police department of the City of San Antonio at the time of the alleged offense, and were familiar with the house back of the Menger Hotel, where appellant lived, and knew the general reputation of the house, and that it was a disorderly house and had been used as such for years, and was being used as such at the time they made the raid; that they had raided this house two or three times and found unmarried men and women in rooms together; that some of the women were well known prostitutes; and that when they entered the house at the time alleged in the information they inquired for the landlord and keeper of the house, and defendant came forward and stated he was such, and if they had any business to take it up with him; that this was his place and he lived there. They further testified that a prostitute by the name of Virginia Carothers was taken out of a room with a traveling salesman by the name of McMullen, to whom she was not married; and that they were undressed, and that this was about 1 o'clock

in the morning, and that another unmarried couple were found in another room of the same house at the same time, and that appellant was there at this time.

There is also evidence that an attorney named Cresson represented defendant on the trial before the jury, and on the former term of the court defendant asked for a continuance, which was granted, and that there was an agreement had with defendant in open court that inasmuch as the State was then and there ready for trial, and had all of its witnesses present, and that one, Virginia Carothers, a witness for the State, was likely not to be found again, and likely not to be present at the trial of this cause at a later date, defendant and his attorney then and there agreed with the court and the county attorney that the said Virginia Carothers should be then and there in open court sworn by the court and examined by the State and defendant, which was done, and defendant cross-examined her and elicited from said witness all testimony material to this cause, and agreed that said testimony then and there in open court obtained from said witness should be used at the trial of this cause at a later date, and that in order to preserve said testimony exactly as it was given in open court it should be reduced to writing in narrative form, and sworn to by the witness; and that thereupon same was reduced to writing at once in the office of the county attorney, the attorney for defendant being present and agreeing to the statement as written, which statement was then and there exhibited to the defendant which the defendant agreed was as given in the court. That the defendant and his attorney then and there agreed that it was as he wished it, and further agreed that said statement was to be read in evidence as the testimony of Virginia Carothers without reservation, by both parties, as all that Virginia Carothers knew or could testify to in this case; and that said statement be taken and admitted in evidence as of the same weight and merit as if the said witness was present at the trial and testified under oath as a witness, the said statements that are included in said affidavit. She testified, without repeating it in detail, that she was at that time living in San Antonio, and was not married to McMullen and never had been; and was not married to him at the time he and she were in a room at Belle Cook's house about midnight on the 13th day of December, 1915; that this was the third time she and McMullen had been at Belle Cook's house and stayed there together for the night. Witness says she was rooming at the Menger Hotel at the time she went to Belle Cook's house and when they got there Mr. McMullen made arrangements with Belle Cook and her husband, defendant, for the room they were to occupy on these different occasions; and on the first occasion in going there witness heard Belle Cook ask McMullen where he got such a pretty wife. She testified further she was a sporting woman, and was at this house the night the police made the arrest and the raid and was in the room with McMullen and they were undressed. She also said Belle Cook knew and had seen her there prior to this time. That both Belle Cook and her husband,

appellant, were there at the time they were arrested, and when McMullen engaged the room. Without going further into detail, this is a sufficient statement of the facts.

It might be stated further that Mr. Cresson, who represented appellant on the trial, is not the attorney representing him here, but other attorneys were employed.

There was no exception taken to any action of the court during the trial. The court gave every charge asked by the State and the defendant. In the motion for new trial some matters are set up which, in our judgment, can not be noticed because no exception was taken to any of the matters, except specified as grounds of the motion for new trial. The court at the request of the county attorney gave a general definition of what it takes to constitute a disorderly house, etc. The county attorney asked another charge applying the law to the facts of the case, and also a charge was asked by the defendant. This charge asked by defendant is attacked by him in the motion for new trial and here because it is not the law, and that it is of such a nature it ought to reverse the judgment. In order to have the case reversed exception must be taken at the time of the trial and before the charge is read to the jury, if it be a felony, and the same rule has been held to apply to misdemeanors as under the statute before it was amended with reference to the time of taking exceptions to the charge. In Basquez v. State, 56 Texas Crim. Rep., 329, this matter came under review again, and so far as the writer has been able to ascertain has been followed by the decisions of the court since. Under that view of the law, even if the charge was erroneous, it would not be treated as fundamental error unless contrary to the law and the facts. The special charge given at the request of appellant is as follows:

"Unless you believe beyond a reasonable doubt that defendant, William Debth, was keeping the premises, or did aid, abet, assist in or was concerned in keeping said premises where a woman and a man were found together, and unless you further believe also that the defendant, William Debth, rented a room to a man and a woman or did aid, abet, assist in or was concerned in renting said room and at the time knew them not to be married, you will find the defendant not guilty."

This charge seems to be favorable to the defendant, and it is attacked largely because it fails to require the jury to find that the premises were rented to this man and woman for sexual intercourse by mutual agreement. In addition, the court gave the presumption of innocence and the reasonable doubt, etc. In the absence of an exception taken these charges can not be reviewed, especially the charge requested by appellant, if for no other reason under the doctrine of what is termed in the books invited error.

Again it is urged the evidence is not sufficient because it does not show the witnesses to have been sworn, and this only to be gathered from the statement of facts. Of course, the evidence of Virginia Carothers was sworn to at the time under the circumstances above stated.

The statement of facts is silent as to whether the other witnesses were or were not sworn, and the ground of attack does not show whether they were or were not sworn. It seems to be based upon the fact that the statement of facts does not show on its face that they were sworn. We are of opinion this proposition is not well taken. In Goldsmith v. State, 32 Texas Crim. Rep., 112, the proposition is laid down that where a witness who was not sworn was permitted without objection to testify on the trial, it is too late on the motion for new trial to raise the question. The same proposition was laid down as far back as Bell v. State, 2 Texas Crim. App., 215. These cases have been followed, and some of the authorities will be found collated in Rose's Notes, volume 5, page 917, of that work. Reading from the syllabus as found in Goldsmith v. State, supra, this is quoted: "It is too late on motion for new trial to urge that witness was not sworn before testifying where no objection was made at the trial." This was approved in United States v. Armour & Co., 142 Fed., 808; Dodd v. State, 44 Texas Crim. Rep., 480; Coleman v. State, 43 Texas Crim. Rep., 15.

It is again urged that the affidavit made by Virginia Carothers and used on the trial was not admissible for various reasons, among others, it is contended defendant was not confronted with the witnesses, etc. However this may be, there was no bill of exceptions reserved to the affidavit. It was agreed to by the defendant and his attorney in open court, with the concurrence of the court, for reasons already quoted and stated above, and no objection was urged to it on the trial. It comes for the first time on motion for new trial. The writer has not agreed with the majority of the court on the question of the reproduction of testimony under the constitutional provisions requiring the accused to be confronted with the witnesses against him, but this question does not come within that rule as he understands it. A defendant may object to the reproduction of testimony or its production in any form if it has not been legally done. The rule is well settled also that in order to obtain advantage the testimony must be objected to at the time, with the exception of where the wife is used in behalf of the State. There being no exception, and the matter having been fully agreed to by the defendant and his attorney, Mr. Cresson, we find no error in this matter requiring a review of the question or a reversal for that reason.

As the record is presented we are of opinion that there is no reversible error shown, or that the errors as shown are not of such nature and presented in such manner that they can be reviewed to the end of reversing the judgment.

The judgment, therefore, will be affirmed.

*Affirmed.*