**Cipriano Ramon ALMANZA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 242–83.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 8, 1984.

On Rehearing Feb. 27, 1985.

Lee Ann Dauphinot, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, Lee A. Joyner, Jr., Betty McCutchan and James J. Heinemann, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The Fort Worth Court of Appeals stated the following in *Almanza v. State*, 645 S.W.2d 885 (Tex.App.—Ft. Worth 1983):

Although many recent opinions have off-handedly dismissed the changing of 'and' in the indictment to 'or' in the court's charge, such approach is dangerous and usually fatal in matters where *aggravation* or *jurisdiction* is involved. In the instant cause of *aggravated rape* the indictment *joined* the allegation of threats of death to the standard form

allegation of rape by the word *and*. In the court's charge, [however], the aggravation feature was *disjoined* from rape by the word *or*. Such constitutes fundamental error. *Messenger v. State*, 638 S.W.2d 883 (Tex.Cr.App.1982).

The cause is reversed and remanded to the trial court for further proceedings under this indictment.

■ The State has filed a petition for discretionary review with this Court, asking us to make the determination whether the above decision of the Court of Appeals is correct. We have concluded, after the respective parties favored this Court with well written supplemental briefs, as well as making outstanding oral arguments, that the decision of the Court of Appeals is in all things correct.

■ The State's petition for discretionary review was improvidently granted. It is therefore ordered dismissed.

MILLER, Judge, concurring.

Although there is merit in the dissenting opinion of Judge Clinton, I concur with the decision of the majority to dismiss the State's petition in this case as improvidently granted because the issue of the relationship between fundamental error in the court's charge and error in the court's charge as contemplated by Article 36.19, V.A.C.C.P., has not been thoroughly briefed or argued by either the State or the defense. Historically the advocacy system has served the judiciary well in charting the course of criminal jurisprudence in this state. If we are going to redefine fundamental error vis-a-vis the court's charge to the jury, as perhaps we should, then let us do so when the issue is properly joined, either on motion for rehearing in this case or in a future case before the court. Because the dissent would raise and address the issue *sua sponte* in this case, I concur in dismissing the State's petition.

CLINTON, Judge, dissenting.

One reason for granting the petition in this cause was to examine seriously a claim of "harmless fundamental error" in the

charge of the court to the jury, and we ought to pursue that examination to a just end.

Beginning with Old Code Articles 594–603 and decisions construing them,[1] I have tracked developments in the law of fundamental error in a court's charge through legislative amendments of 1897 [2] and 1913 [3] and judicial opinions thereafter—more thoroughly than before.[4] That research and conclusions drawn from it are contained in an opinion which has been circulated to all other members of this Court and presented in conference. However, it is much too long for publication as usual. Accordingly that opinion is being handed down as an appendix to this one, but will not be published.

Several lessons are taught by those historical developments that have been chronicled in my unpublished opinion concerning error in a charge of a trial court to a jury. One is that an alleged error not properly raised and preserved according to Articles 36.14, 36.15 or 36.16, V.A.C.C.P. will not be considered on appeal *unless* it presents "fundamental error." Another is that when claimed error has been properly raised, preserved and brought up on appeal, the judgment shall not be reversed *unless* the error "was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial," Article 36.19, *id.* A third is that utilizing the tests of Article 36.19 to find "fundamental error" when an objection was *not* made before the charge was read to the jury, as is now so often done on appeal, may not be sound.

Accordingly, I do not agree that we improvidently granted the State's petition for discretionary review. Still, a majority will not redefine the fundamental error doctrine

1. E.g., *Bishop v. The State*, 43 Tex. 390 (1875).

2. Acts 1897, 25th Leg., ch. 21, p. 17.

3. Acts 1913, 33rd Leg., ch. 138, p. 278.

4. See *Doyle v. State*, 631 S.W.2d 732, 741–744 (Tex.Cr.App.1980) (Concurring Opinion on Motion for Rehearing); *Wilson v. State*, 625 S.W.2d

as it applies to a charge of a trial court to a jury.

Therefore, I dissent.

W.C. DAVIS, McCORMICK and CAMPBELL, JJ., join.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

Article 36.19, V.A.C.C.P.[1] provides:

"Review of charge on appeal

Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.-16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial."

Our current statute is the lineal descendant of an act of the 33rd Legislature in 1913, ch. 138, p. 278, which amended what was then art. 743:

"Whenever it appears by the record in any criminal action upon appeal of the defendant that any of the requirements of the nine preceding articles have been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial, and all objections to the charge, and on account of refusal or modification of spe-

331, 334–335 (Tex.Cr.App 1981) (Concurring Opinion on Motion for Rehearing) and *Sattiewhite v. State*, 600 S.W.2d 277, 279–285 (Tex.Cr.App.1979) (Opinion on Motion for Rehearing).

1. All statutory citations are to a code of criminal procedure unless otherwise noted.

cial charges shall be made at the time of the trial."

## I.

There has been disagreement over how these provisions relate to various types of error in the court's charge to the jury. Two schools of thought are identified in the appendix to the dissenting opinion filed on original submission of this cause. As espoused in *Dowden v. State*, 537 S.W.2d 5, 6 n. 1 (Tex.Cr.App.1976), and purportedly applied since, one theory is that the "disregarded" requirements refer only to the requirement that counsel object to the charge prior to jury argument. Thus prior art. 743 and current Article 36.19 come into play only if there has been no objection to the charge at trial. Under this theory the current statute addresses only fundamental error in the charge; it sets no standard for what we shall call "ordinary reversible error."

The second theory proceeds on the supposition that the "calculated to injure" and "fair and impartial trial" phraseology describes the test which the Court, at least prior to the 1913 amendment, used for fundamental error. However, under this second theory those phrases now come into play only if there has been an objection at trial to the jury charge, and therefore set up a "harmless error" standard. See *Dowden*, supra (Douglas, J., dissenting). Further, as this second theory would have it, there is no separate statutory test for fundamental error where no objection has been made to the charge at trial, and indeed the Legislature in 1913 intended to end the doctrine of fundamental error. The second theory thus holds that, if the Legislature in 1913 had its way, there would never be a reversal for unobjected to error in the jury charge.

A third theory may appear in Judge Vollers' dissent in *Brewer v. State*, 572 S.W.2d 940, 941–944 (Tex.Cr.App.1978). Judge Vollers seemed to accept the idea that the Court had used the "calculated to injure" and "fair and impartial trial" language as a test for fundamental error. But it was his view that Article 36.19 and art. 743 were originally meant as harmless error rules which came into play where an objection had been made at trial. Thus he argued that Article 36.19 applies to ordinary reversible error and has relevance to fundamental error only to the extent that a court should not reverse for fundamental error if in fact the error is harmless. The apparent contradiction in terms of "harmless fundamental error" is part of what has finally convinced us our recent course may be unsound; to the end of reexamining it we now proceed.

It is critical that we acknowledge from the outset the simple fact that no conceivable theory can reconcile the cases written on the subject over the last 130 years. Imprecise language, both statutory and decisional, has destroyed any hope of harmonizing all authoritative statements in any literal sense. But upon close scrutiny and reflection a pattern of concern emerges—a pattern, we believe, is also most consistent with and encouraging of the fair administration of justice.

## A.

In the Old Code art. 594 mandated in a felony case that the judge of a trial court, after argument to the jury had been concluded, deliver to it a written charge "in which he shall distinctly set forth the law applicable to the case," without expressing any opinion as to weight of evidence or summing up testimony. The next six articles also imposed certain duties and responsibilities on the trial court in given circumstances, and the seventh allowed the jury to request and receive a copy of "the charges given." Then came art. 602, requiring reversal in prescribed circumstances, *viz*:

> "Art. 602. Whenever it appears by the record in any criminal action taken to the Supreme Court upon appeal by defendant, that the instructions given to the Jury were verbal (except where so given by consent in a case of misdemeanor,) *or that the District Judge has departed* from any of the requirements of

the eight preceding Articles, the judgment shall be reversed, *provided* it appears by the record that the defendant *excepted* to the order or action of the Court at the time of trial." [2]

Art. 603 provided that defendant "may tender his bill of exception to any ... charge of the Court" and that "the Judge shall sign such bill of exceptions, under the rules prescribed in civil suits, in order that such ... charge may be revised upon appeal to the Supreme Court."

The Old Code did not require defendant to file and present a motion for new trial in a criminal action, but title VI contemplated that one may do so. Art. 672 provided grounds for granting a new trial, the second of which was

"2. Where the Court has misdirected the Jury as to the law, or has committed any other <u>material error calculated to injure the rights of the defendant</u>."

That the underscored language became a talismanic phrase by which—though error in a charge was not excepted to nor grounded in a motion for new trial—the Supreme Court justified reversal of a judgment of conviction, is shown in the leading case of *Bishop v. State,* 43 Tex. 390 (1875). See an analysis of the *Bishop* opinion in *Doyle v. State,* 631 S.W.2d 732, 739–741 [3] (Tex.Cr.App.1982) (Concurring Opinion on Motion for Rehearing).

The Legislature adopted a revised code of criminal procedure in 1879. In Chapter 5, Trial and its Incidents, arts. 677 through 684 are substantially like former arts. 594–601. Former art. 602, however, was modified somewhat, and became art. 685:

"Art. 685. Whenever it appears by the record in any criminal action, upon appeal of the defendant, that *any of the requirements of the eight preceding articles has been disregarded,* the judgment shall be reversed; *provided,* the error is excepted to at the time of the trial." [4]

Thus disregard of a requirement by the judge produced error and a reversal on appeal—if defendant or his counsel properly excepted. *Cunningham v. State,* 27 Tex.App. 479, 11 S.W. 485, 486 (1889).[5]

Before former art. 723 was revised by Acts 1897, 25th Leg., ch. 21, p. 17, other than requesting written instructions, the manner of preserving an exception to the charge of the court was that stated in *Martin v. State,* 25 Tex.App. 557, 8 S.W. 682 (Ct.App.1888), *viz:*

"When a defendant is dissatisfied with a charge of the court, and desires to except thereto, he must state to the court, at the time the charge is given to the jury, that he excepts thereto; but he is not required to specify his exceptions until the jury has retired from the box. But, before a verdict is returned, he must specify his exceptions, in order that the court may correct the charge if, in the opinion of the court, it is erroneous or insufficient. *McCall v. State,* 14 Tex. App. 353; *Phillips v. State,* 19 Tex.App. 158." [6]

---

**2.** All emphasis is added by the writer of this opinion unless otherwise indicated.

**3.** "Accordingly, bringing together that error in the charge to which exception had been leveled—addressed in the first part of the *Bishop* opinion—and the 'apparent error' pointed out in the second segment of the opinion, the court finally concluded:

'On both grounds of error, in charging substantially on the weight of evidence excepted to at the time of the trial, and for the material deficiency in the charge, not objected to below, but apparent on the record, and deemed to be an error *calculated to injure the rights* of the defendant, the judgment is reversed and the cause remanded.' *Id.,* at 403–404."

**4.** The Legislature italicized "provided."

**5.** Art. 686, providing for bills of exceptions, remained practically the same as old art. 603, and the second ground for granting a motion for new trial was unchanged by art. 777.

The 1895 code of criminal procedure renumbered those provisions with respect to the court's charge now under consideration to arts. 715 through 723, bill of exceptions to art. 724 and grounds for new trial to art. 817; other than adding a catchline for each, the language of the respective articles remained unchanged.

**6.** Finding that counsel for appellant has failed to follow the right procedure and, indeed, refused when called upon to state his grounds of exceptions until after the verdict was returned, the Court concluded:

To be noted also is that in those earlier days jury argument preceded giving the court's charge to the jury.

Decisions under these articles and their predecessors are collected and annotated in Willson, The Penal Code and Code of Criminal Procedure of Texas. Under art. 723 (685) (O.C. 602) are the following statements of law:

"If the error, however immaterial it may be, is promptly excepted to, and presented by a proper bill of exception on appeal, the statute is mandatory that the conviction shall be set aside, without inquiry as to the effect of such error upon the jury. [Citations omitted.] [7]

If the error be not excepted to at the proper time, the next point at which it should be objected to is in a motion for a new trial. But, when the objection is presented for the first time in a motion for a new trial, it is subject to another and very different rule than when it is presented by proper bill of exception, which rule is, that if under all the circumstances as exhibited in the record the error was 'calculated to injure the rights of the defendant,' the conviction will be set aside; otherwise, the error will be deemed immaterial, and the conviction will not be disturbed because of it. If the objection be still further delayed, and *for the first time presented on appeal,* the conviction will not be disturbed because of the error, unless it be an error of a fundamental nature; that is, if the error be a material misdirection of the law applicable to error, or such error of omission, is calculated, under all the circumstances of the case, to injure the rights of the defendant, the conviction will be set aside. [Citing *Bishop v. The State,* supra and a host of opinions by the court of appeals, including *Tuller v. The State,* 8 Tex.App. 501 (Ct.App.1880)

"We, therefore, are not called upon to consider the exceptions to the charge, and decline to do so, there being no fundamental error pointed out or perceived by us in the charge."

and *Mace v. The State,* 9 Tex.App. 110 (Ct.App.1880) ]."

Accord: White's Criminal Procedure Annotated 550.

As revised in 1897 art. 723 read:

"Article 723. *Judgment will be reversed on appeal, when etc.*—Whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall *not* be reversed, unless the error appearing from the record was calculated to injure the rights of the defendant, which error shall be excepted to at the time of the trial, *or on a motion for a new trial.*"

Thus it is seen that the 1897 revision of former art. 723 (743, C.C.P. 1911) continued the exception practice and also permitted claimed error in a charge to be raised on motion for new trial.[8] Again, the thrust of that revision was to abolish the extant requirement that the judgment be reversed when there had been a "disregard" of any other requisites pertaining to the charge, if excepted to at the time of trial, and to direct that the judgment *not* be reversed for failure to comply with preceding requisites unless error was properly preserved by exception or specified in motion for new trial. *Doyle v. State,* supra, 742, n. 9. Still, the applicable provisions did not mandate objections to the charge before it was read to the jury. See 1911 code of criminal procedure, arts. 735–743.

Initially the Court accepted the notion that the 1897 revision "prohibited it from reversing a judgment for material error ... in regard to charging the law, unless 'the error shall be excepted to at the time of the trial or on motion for new trial,'" *Pena v. State,* 38 Tex.Cr.R. 333, 42 S.W. 991 (1897). However, as traced in *Doyle v. State,* supra, at 742–743, after judges jousted with each other as members

---

7. *Inter alia,* they include *Marshall v. The State,* 40 Tex. 200 (1874) and *Bishop v. The State,* supra.

8. "... which error shall be excepted to at the time of the trial, or on a motion for a new trial."

changed, the Court came to characterize the 1897 legislation as "remedial," designed to preclude reversal for "mere matters of form, where there had been no invasion of any substantial right of a defendant . . . ," *Jones v. State*, 53 Tex.Cr.R. 131, 110 S.W. 741, 744–745 (1908). In *Grant v. State*, 59 Tex.Cr.R. 123, 127 S.W. 173 (1910) Presiding Judge Davidson wrote for a unanimous Court:

"The court charged with reference to taking property without the knowledge of the injured party. This was not charged in the indictment, and therefore could not form the predicate for conviction. It is contended, however, this cannot be noticed, because there was no exception taken to this charge in the court below, either by bill of exception or in motion for new trial, and that under the terms of article 723 of the Code of Criminal Procedure of 1895 this matter cannot be considered by the court on appeal as matter for reversal. We are of the opinion that this does not come within the terms and provisions of that statute, as construed by this court in previous decisions. It has not been held that a charge which authorizes the conviction

of a party for an offense with which he is not charged comes within the purview of article 723. * * * To sustain this conviction would be to hold that a party could be convicted of a felony without an indictment proffered by a grand jury. This would be directly violative of section 10 of the Bill of Rights." [9]

From the 1897 amendment to art. 723 until the effective date of Acts 1913, 33rd Leg., ch. 138, p. 278, then, the law was that when what was thought to be error in the charge had been excepted to at time of trial and preserved in a bill of exceptions or raised in a motion for new trial and was then urged on appeal, judgment still would not be reversed *unless* the error was "calculated to injure the rights of the defendant." If claimed error was not thus preserved, on appeal only fundamental error could be considered. *Jones v. State*, supra, and other authorities cited and discussed *ante*. By its amendments in 1913, however, the Legislature introduced a new concept: reversals on account of error in the court's charge would be reduced if it was first pointed out to the trial court *before* its charge was given to the jury.[10]

9. This view was based upon a record that on rehearing was corrected to show that the indictment had been incorrectly copied in the transcript, the pertinent clause being inadvertently omitted. However, expressions of Presiding Judge Davidson for the Court are but an elaboration of the finding in *Williams v. State*, 53 Tex.Cr.R. 17, 108 S.W. 371 (1908), that a charge

authorizing conviction for an offense not charged is "error of such moment as requires a reversal of the judgment," *id.*, at 372.

10. A comparison of germane articles in the 1911 code with changes made by the Act of 1913 set out in the margin indicates what the Legislature sought to accomplish by enacting the latter.

|  1911 Code  |  1913 Act  |
| --- | --- |
| Art. 735. [715] Charge of court to the jury.—After the argument of any criminal cause has been concluded, the judge shall deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case; but he shall not express any opinion as to the weight of evidence, nor shall he sum up the testimony. This charge shall be given in all cases of felony, whether asked or not. [O.C. 594.] | Art. 735. In all felony cases the judge shall, before the argument begins, deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case; but he shall not express any opinion as to the weight of the evidence nor shall he sum up the testimony. Before said charge is read *to the jury, the defendant or his counsel shall* have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. |
| Art. 736. [716] Charge shall not discuss the facts, etc.— | Not amended. |

Considering the problems created by the 1897 "remedy"—that error was preserved by motion for new trial after return of verdict as well as by an exception to the

Art. 737. [717] Either party may ask written instruction.—After or before the charge of the court to the jury, the counsel on both sides may present written instructions, and ask that they be given to the jury. The court shall either give or refuse these charges, with or without modification, and certify thereto; and, when the court shall modify a charge, it shall be done in writing and in such manner as to clearly show what the modification is. [O.C. 596.]

Art. 737. Before the court reads his charge to the jury, counsel on both sides shall have a reasonable time to present written instructions and ask that they be given to the jury. The court shall give or refuse these charges with or without modification, and certify thereto; and, when the court shall modify a charge it shall be done in writing and in such manner as to clearly show what the modification is.

Art. 737a. After the judge shall have received the objections to his main charge, together with any special charges offered he may make such changes in his main charge as he may deem proper, and the defendant or his counsel shall have the opportunity to present their objections thereto and in the same manner as is provided in Article 735, and thereupon the judge shall read his charge to the jury as finally written, together with any special charges given. After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall in his discretion, permit the introduction of other testimony, and in the event of such further charge the defendant or his counsel shall have the right to present objections in the same manner as is prescribed in Article 735. Provided that the failure of the court to give the defendant or his counsel a reasonable time to examine the charge and specify the ground of objection shall be subject to review either in the trial court or in the Appellate Court.

Art. 738. [718] Charges shall be certified by judge.—

Not amended.

Art. 739. [719] No charge in misdemeanor, except, etc.—

Not amended.

Art. 740. [720] No verbal charge, except, etc.—

Not amended.

Art. 741. [721] Judge shall read to jury, what.—

Not amended.

Art. 742. [722] Jury may take charge with them.—

Not amended.

Art. 743. [723] Judgment will be reversed on appeal, when, etc.—Whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment shall not be reversed, unless the error appearing from the record was calculated to injure the rights of the defendant, which error shall be excepted to at the time of the trial, or on a motion for a new trial. [O.C. 602; amended Act 1897, p. 17.]

Art. 743. Whenever it appears by the record in any criminal action upon appeal of the defendant that any of the requirements of the nine preceding articles have been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial, and all objections to the charge, and on account of refusal or modification of special charges shall be made at the time of the trial.

charge particularized only after the jury retired to deliberate—framers of the 1913 Act believed that there were too many reversals for error in the charge "due to the fact that such errors were not pointed out to the trial judge before the charge was given ...," Acts 1913, 33rd Leg., ch. 138, p. 279, § 5. Accordingly, they proposed and the Legislature agreed to a new procedure whereby the trial judge would prepare a draft charge, submit it for objection and requested instructions and make modifications if so advised—all before the final charge is read to the jury and on the basis of which counsel would make their arguments. Thus, the problems perceived were to be solved by requiring distinctly specified objections timely made in writing as prescribed to the end that the trial judge was given an opportunity to determine whether such objections presented error and, if so, to correct that part of the charge to which they were addressed. This solution envisioned that the appellate docket of the Court would not be further "crowded with cases many of which contain such errors," *ibid.*, since they would be obviated by the trial court when called to its attention. But just how art. 743 fit into that procedural scheme remained theoretical.

### B.

In studying art. 743 and Article 36.19 to determine which, if any, theory is correct, one cannot confidently answer that question from the current statute itself. The statute is inherently ambiguous; it can be read dozens of times without revealing with certainty what the Legislature intended. It is an example of solecism—a puzzling grammatical construction that yields no logical meaning, or any number of any meanings. See Goldfarb and Raymond, *Clear Understandings: A Guide to Legal Writing* 13 (1982). But since Article 36.19 is just a modernized version of art. 743, an examination of the legislative history of the latter may be helpful.

The genesis of the 1913 version of art. 743 is Senate Bill 166, introduced in the 33rd Legislature by then Senator W.C. Morrow, who was also chairman of the Senate Judiciary Committee No. 1. Senate Journal, 33rd Leg. 7, 10 and 136. Section 4 of the Bill amended art. 743.

Not only had the 1897 amendment to article 723 changed the basic concept of reversing for "disregard" of preceding articles, but it provided what was obviously intended to be a restrictive test. It retained the idea of calling such "disregard" an "error," requiring that it be "excepted to," as in the 1879 revision, and included it in an "unless" clause that prescribed the restrictive test, *viz:*

"unless the error appearing from the record was calculated to injure the rights of the defendant, which error shall be excepted to ..."

For a reason that does not seem to be documented, section 4 of S.B. 166 substantially followed the 1897 language to the point of "which error," but there added for the first time ever the following:

"or unless it appears from the record that the defendant has not had a fair and impartial trial ..."

We note that the first "unless clause" specifies "the error appearing from the record," while the second does not mention "error" but reads "unless it appears from the record." In context and grammatically "it" is used as the subject to the verb "appears" to refer to a state of circumstances in the record. In short, Senator Morrow perceived two distinct bases for reversal: one is "error" in charging a jury to which a written objection had been made; the other is a "disregard" that from the record is to be determined by the second "unless clause." [11]

11. Presiding Judge Davidson had written in his dissenting opinion in *Johnson v. State*, 42 Tex. Cr.R. 87, 58 S.W. 60 (1900): "[Article 723] requires affirmancies 'unless the error was calculated to injure the rights of defendant.' It has no reference to the settled law of this state, wherein judgments were reversed when the error was of a fundamental nature, or which infringed upon those rights guarantied the accused, of a fair 'trial by an impartial jury,' due process of law, etc. * * * Then it may be deduced from an inspection of article 723 that

As originally introduced and then reported out of committee, the final clause in section 4 was:

"... and the error complained of must have been excepted to before the charge was given to the jury."

While the bill was being considered on the floor two senators proposed an amendment to strike out all of that section; a substitute was offered to add a proviso to the effect that in certain prescribed circumstances an accused would have available on motion for new trial any material error apparent from the record. The substitute was tabled and a vote was taken, but because of much confusion over the parliamentary status of things senators voted to reconsider. During the ensuing discussion directed to the original amendment to delete all of section 4 Senator Morrow produced a substitute for that amendment; his substitute deleted the final clause—"and the error complained of must have been excepted to before the charge was given to the jury"—and substituted the following:

"and all objections to the charge, and on account of refusal or modification of special charges shall be made at the time of the trial."

As thus modified on the floor S.B. No. 166 passed second reading by a large majority, including some of those who had tried to strike the section or add a proviso to it. Senate Journal 896. Patently, Senator Morrow had struck a compromise to save section 4. But to what effect?

Grammatically awkward, the final substitute is also out of harmony with the rest of the article and is redundant, one part or another being in amended articles 735 and 737a; a practical explanation is that it was hurriedly drafted on the floor in an effort to persuade reluctant senators. The meaning of the clause, as well as the entire section, apparently was to be left to the

courts, and to early opinions construing the Act we now turn.

The Act became effective on or about July 5, 1913. So far as our research reveals the first case in which the Court examined revised art. 743 is *James v. State*, 72 Tex.Cr.R. 457, 163 S.W. 61 (1914). Noting that trial had been held in September 1913, the Court, through Judge A.J. Harper, pointed to the requirement that when the proposed charge is furnished counsel for accused he must present objections in writing before the charge is read to the jury. That had not been done. Accordingly, Judge Harper wrote:

"Consequently, as no exception was taken to the charge before it was read to the jury, and none taken during the progress of the trial, we cannot consider nor review those grounds in the motion for new trial which seek to complain of the court's charge. The provisions of chapter 138 ... prohibit us from doing so, *unless the error should be one that is deemed in law a fundamental error.*"

*Id.*, 163 S.W., at 62. For his part Judge Davidson was "dubitante," explaining that since "wide changes in the rules of procedure" were involved "[b]efore agreeing to the construction sought to be placed on these statutes by my Brethren I desire to investigate more fully ...," *id.*, at 63. On rehearing Judge Harper again addressed the effect of failing timely to file written objection to the charge, *viz:*

"But as appellant filed no objections to the charge at the time it was presented to him, and at the time it was read to the jury, he could not later complain of it, either in the motion for new trial nor in a bill of exceptions filed after term time *except under the conditions named in the law.* See Article 743 as amended by the Act of the Thirty-Third Legislature." *Id.*, at 63–64.

the legislature never intended, and does not provide, that a case shall not be reversed where there is fundamental or radical error. It only undertakes to limit the action of this court in reversing cases to those where the error is of a nature doubtful in its bearing upon the case;

that is such as may be calculated to injure the rights of the party on trial." *Id.*, at 66. That position was implicitly accepted by the Court in *Grant v. State*, 59 Tex.Cr.App. 123, 127 S.W. 173 (1910).

From both his opinions in *James* one may glean that Judge Harper viewed art. 743 as a statement of "conditions" under which an error deemed fundamental could be reviewed on appeal.

Two weeks later the Court delivered its opinion in *Wright v. State*, 73 Tex.Cr.R. 178, 163 S.W. 976 (1914), again written by Judge Harper. The issue was whether an appellant could preserve error in the manner allowed under art. 743 as it existed at time of the offense or was required to follow art. 743 in effect at time of trial. In the course of finding that the changes made were merely procedural and thus applied when the case was tried, Judge Harper wrote concerning the latter:

> "So it is clear that the intent and purpose of the Legislature is that we should not reverse a case because of error in the charge, if error there be, unless it was excepted to at the time of the trial, and not then unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. * * [C]onsequently we are without authority to review the charge of the court unless complained of at the time of trial, *unless fundamental error is presented.*"

*Id.*, 163 S.W., at 977–978.

In light of what Judge Harper seemed to be saying in *James*, supra, at first blush the longer sentence quoted above from *Wright* appears to be a second reading of art. 743, and some judges agreeing with the theory espoused by Judge Douglas in *Dowden*, supra, outlined *ante*, have stated that view: e.g., McCormick, J., dissenting in *Doyle v. State*, 631 S.W.2d 732, at 750 (Tex.Cr.App.1982). However, given the tendency of earlier writers to string out between commas many more or less independent clauses in one sentence, appearances are often deceiving.

Within three weeks Judge Harper was writing for the Court:

> "It is too late to complain of the charge after verdict rendered, *unless the charge is so drawn as to prevent appellant*

> *from having a fair and impartial trial.* Article 743 . . ."

*Clay v. State*, 73 Tex.Cr.R. 78, 164 S.W. 1 (1914).

On rehearing in *Wright* shortly thereafter Judge Harper reprised the same subject, but this time he broke out the several matters contained in the long statement written on original submission.

First he wrote that "article 743 provides that the case shall not be reversed unless an error was committed calculated to injure the rights of the defendant, and not then unless the error was pointed out in objections made as the charge was given, or in the refusal of special charges requested, made at the time of trial." However, he next noted that if the trial court had not allowed reasonable opportunity for reading the charge to make objections, the Court would still review objections made after trial, adding:

> "But this is the only instance in which we are authorized to review the charge where objections were not made at the time of the trial, *or unless it is made to appear that a person has not had a fair and impartial trial.*"

Thus what Judge Harper really meant by his lengthy statement saturated with commas is better understood when we take them out and provide other punctuation, *viz:* that we should not reverse a case because of error in the charge unless it was excepted to at the time of trial (and not then unless the error appearing from the record was calculated to injure the rights of the defendant) or unless it appears from the record that the defendant has not had a fair and impartial trial. That reading is absolutely consistent with his separate statements on rehearing.

Though Judge Harper would replicate the essence of the extended statement made on original submission in *Wright*, see *Williamson v. State* 74 Tex.Cr.R. 289, 167 S.W. 360, 362–363 (1914), in late 1914 he returned to his understanding of art. 743 expressed on rehearing in *Wright*. Writing for the Court in *Echols v. State*, 75 Tex.Cr.R. 369, 170 S.W. 786 (1914) he re-

fers to art. 743 and points to the emergency clause of the Act as evidence of "the fact that the Legislature intended that a case should not be reversed unless the error was pointed out to the trial judge during the trial of the case, and before the charge was read to the jury." Then applying that which he had just found to the issue before the Court, Judge Harper wrote:

"And as this error in the judge's charge, if error it be, was not called to trial court's attention [as provided], it cannot be raised for the first time in this court, *as it did not prevent appellant from having a fair and impartial trial ...*" *Id.,* 170 S.W. at 792.

On rehearing the Court persisted in its refusal to consider the claimed error in the charge of the court, citing *James* and *Wright. Ibid.*

In fact, during this period of time *Wright* became the leading case on the subject. See Shepard's Texas Citations. Also noteworthy is that Judge Davidson, who will be remembered for his initial acceptance and later rejection of the 1897 amendment as a legislative attempt to restrict appellate review of error in a charge of the court to the jury, though initially "dubitante," did not dissent to the construction placed on art. 743 by the Court in *James* and *Wright* and their progeny.

Judge Harper left the Court December 31, 1916; he was succeeded by W.C. Morrow. See 191 S.W. (v) and *Marta v. State,* 81 Tex.Cr.R. 135, 193 S.W. 323, 333 (1917). Judge Morrow came to the Court from the State Senate and, as recounted *ante,* was the sponsor of S.B. No. 166, the bill that proposed the 1913 revision of articles dealing with charges to a jury, including art. 743.

Judge Morrow was in his third month on the Court when *Childs v. State,* 81 Tex. Cr.R. 21, 193 S.W. 664 (1917) was decided. The opinion was written by Presiding Judge Davidson. In *Childs,* supra, he wrote on original submission for a unanimous Court:

"There are no bills of exception in the record. In the motion for new trial there are some criticisms of the charge. Some of these would have been sufficient to have required a reversal, if called to the attention of the court before the charge was read to the jury, but this was not done.... These are not of such fundamental character *as is recognized under the statute* requiring a reversal in the absence of exceptions taken before the charge is read to the jury."

On rehearing, Presiding Judge Davidson restated that proposition:

"Motion for rehearing is filed presenting again the alleged errors in the court's charge. It may be a sufficient answer to all these matters that there was no exception taken to the charge any time except on motion for new trial.... Under the late statute it is necessary that, *unless there be fundamental error,* exception be taken to the charge before the argument is begun. This, of course, requires the court to charge the jury before argument." *Id.,* at 665.

Contemporaneously Judge Morrow was working out a similar problem in *Holder v. State,* 81 Tex.Cr.R. 194, 194 S.W. 162 (1917), his opinion for the Court being delivered March 21, 1917. Again, there was not an exception to an instruction on the law of provoking the difficulty, but it was complained about in motion for new trial; appellant contended that since that issue was not raised by evidence the error was fundamental. Although recognizing that in light of prior decisions the contention raised a serious question, Judge Morrow wrote:

"The court exhibited his charge submitting that issue to the appellant's counsel before it was read to the jury. It was not complained of then. The Act of the Thirty-Third Legislature (chapter 138) required the appellant to call the trial court's attention to the fact that he contended that the issue was not raised. Under the construction of that act in *Wright v. State,* 73 Tex.Cr.R. 178, 163 S.W. 976 ... and other cases...., we do not feel authorized to review the ques-

tion, nor can we hold that the record shows fundamental error ... Vernon's Ann.C.C.P. art. 743." *Id.*, at 165.

In June 1917 Judge Pendergast wrote an opinion for the Court in *Davis v. State*, 81 Tex.Cr.R. 450, 196 S.W. 520 (1917). After setting out Article 743, he stated

"We are not called upon to consider any of the errors mentioned in this subdivision of the statute, because there were no objections to the charge, and there are no bills of exception under Article 744, C.C.P., pointing out errors in the trial. These are necessary. See notes articles 743 and 744, Vernon's C.C.P."

However, he added, "Looking alone to the fairness and impartiality of the proceedings," and analyzing the situation, "[t]his court cannot say that the trial was illegal, nor that it was unfair or not impartial." *Id.*, at 523. See also *Grider v. State*, 82 Tex.Cr.R. 124, 198 S.W. 578, 580 (1917); *Hamilton v. State*, 82 Tex.Cr.R. 544, 200 S.W. 155, 157–158 (1918) and *Merka v. State*, 82 Tex.Cr.R. 550, 199 S.W. 1123, 1129 (1918).

Though Judge Morrow wrote only two of those opinions—*Holder v. State*, and *Merka v. State* (on rehearing)—he at least assented to the language, findings and holdings of the others since he is never shown to have dissented. And agreement is reflected by an opinion he subsequently wrote in *Lowe v. State*, 83 Tex.Cr.R. 134, 201 S.W. 986 (1918). In that murder case exceptions had not been filed to a charge which fairly submitted the issues except the law touching intent to be drawn from use of a weapon not deadly per se, and Judge Morrow expressed the opinion that, if requested, a proper instruction should have been given. However, reminiscent of his opinion in *Holder* he pointed out:

"The failure to give such a charge was an omission which cannot be reviewed by this court in the absence of a specific exception calling the trial court's attention to the matter, filed in a timely manner or an exception to the refusal of a special charge. C.C.P. 737a; *Crosset v. State* ...; *Wright v. State* ...; Ver-

non's C.C.P. art. 743, and cases listed ..." *Id.*, at 988.

But when proper exception was reserved to a feature of a charge that was given, Judge Morrow wrote for the Court a reversal:

"This phase of the charge was probably harmful to the appellant, both as to his theory of manslaughter as a defense against murder, and to his claim of self-defense. It was calculated to suggest to the minds of the jury and to impress them with the view that, in the opinion of the trial court, there was evidence which justified them in concluding that the appellant before the transaction, formed the intent to injure the deceased and willfully shaped his conduct to provoke the deceased into attacking him that he might carry out his intent. Where the issue of self-defense is raised and submitted, its limitation by a charge on provoking the difficulty, without evidence to justify it, has uniformly been held prejudicial error, requiring a reversal."

*Burkhardt v. State*, 83 Tex.Cr.R. 228, 202 S.W. 513, 516 (1918).

On the other hand, notwithstanding a proper bill of exception to an authorization paragraph in a charge that the Court found was not correct because it allowed conviction on a theory other than alleged in the indictment—that he sold liquor to all or either of four parties though the allegation was a sale to four named parties. Judge Morrow wrote:

"The evidence, however, is undisputed that the sale if made by appellant was made to all four parties named in the indictment; that they were all together, all interested in the purchase, each furnishing their pro rata part of the money. This being true, it appears that under article 743, C.C.P. which provides in substance that error not calculated to injure the rights of an accused will not authorize reversal, the error of the court would be classed as harmless. [A host of citations omitted.]"

Price v. State, 83 Tex.Cr.R. 300, 202 S.W. 948, 949 (1918).

"Applying that rule [concerning accomplice testimony], however, and assuming that there was evidence upon which the jury might have concluded that [they] were accomplices, it was incumbent upon appellant to have requested the submission of that issue to the jury, or to at least have excepted to the failure of the court to do so in his charge. An omission of this character is *not fundamental error* nor one that can be raised in motion for a new trial, or on appeal, in the absence of an exception to the charge as provided by the act of the Thirty-Third Legislature, chapter 138 (Vernon's Ann. Code Cr.Proc. 1916, arts. 735, 737, 737a, 743)."

This sampling of opinions over a period of two years is quite enough to demonstrate that Judge Morrow, the legislative sponsor of the act which became Chapter 138 in 1913, fully agreed with the construction of its provisions that Judge Harper had earlier formulated.[12]

### C.

■ After researching Texas statutory and decisional law from 1857 forward, we have concluded that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error. If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

■ On the other hand, if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"—in short "egregious harm."

■ In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

This conclusion is not undermined by the fact that some of the cases couple the phrases "error of a fundamental nature" or "material error" with "calculated to injure."[13] In those days before the 1897 revision to art. 723 the appellate courts considered the nature of an error to which exception had not been timely made. That is, they assayed the degree of flagrancy in a particular "disregard" of statutory or decisional norms dictating content and delivery of a charge to the jury. See *Willson*, op cit, supra. Should it be, for instance, "a *material* misdirection of the law applicable to the case," then the next determination was whether under the circumstances of the case the error was "calculated to injure the rights of the defendant,"

---

12. Judge Morrow was elected Presiding Judge of the Court in 1921, after the death of Judge Davidson. 227 S.W. (v). Meanwhile Judge O.S. Lattimore had joined the Court, taking the place of Judge Pendergast. 204 S.W. (v). Like Presiding Judge Morrow, Judge Lattimore had been a State Senator, was President Pro Tem in 1913 and a member of Judiciary Committee No. 1, then chaired by Judge Morrow. Senate Journal, 33rd Leg. 7 and 10. His interpretation of Chapter 138 also coincides with that of Judge Morrow. See, e.g., *Howard v. State*, 90 Tex. Cr.R. 164, 233 S.W. 847 (1921):

"It appears to be the law of this state since 1913 that, unless the charge of the court be fundamentally erroneous, either in its affirm-

ative statement of law, or by reason of its failure to state the law, an error therein will not be held reversible unless there be exception taken to such charge at the time it is given, or a charge correctly presenting be refused. [Citing *inter alia, Childs v. State*, supra, and *Debth v. State*, 80 Tex.Cr.R. 4, 187 S.W. 341 (1916).]"

13. The late 1800's particularly produced a rash of such cases. E.g., *Vincent v. State*, 9 Tex.App. 303 (1880); *Roe v. State*, 25 Tex.App. 33, 8 S.W. 463, 465 (1888); *Davis v. State*, 28 Tex.App. 542, 13 S.W. 994 (1890); *Gonzales v. State*, 35 Tex. Cr.R. 339, 33 S.W. 363 (1895); see also *Mace v. State*, 9 Tex.App. 110 (1880).

*ibid.* Thus, prior to the 1897 revision the essential ingredient was blatant error fundamental in nature, and "injury to rights" became a lesser, albeit a necessary, one. In that way fundamental error met not only a lesser test for harm but also a higher test for greater harm.

■ So for the stated reasons we hold the clause "or unless it appears from the record that the defendant has not had a fair and impartial trial" is a legislative recognition and acceptance of the fundamental error doctrine and is of independent significance within art. 743 and Article 36.19. Construed this way, the statute says that one reason to reverse for error in the charge arises if the error, having been properly objected to at trial, is harmful and therefore "calculated to injure the rights of the defendant." An independent basis for reversal arises if the error, even though not timely objected to, is so egregious and creates such harm that it deprives the accused of a "fair and impartial trial." Our exegesis of the statute, suggested by legislative history of art. 743, is more defensible than any other reading of the statute and in light of the research, a minuscule portion of which is set out above, does more than the others to respect the meanings which the statutes and caselaw had attached to key phrases in the provision.

We will not pretend that every case by this Court since 1913 has used a "fair and impartial trial" test for fundamental error. Far from it. But given the confusion in the area a certain number of cases are simply going to be wrong. Many others can be explained by the fact that courts often used the "calculated to injure" language as the test without realizing that the phrase describes only a necessary, but not a sufficient, ingredient of fundamental error.

However, many cases have stated the test properly, including a number of recent ones. E.g., *Harris v. State,* 522 S.W.2d 199 (Tex.Cr.App.1975); *Boles v. State,* 598 S.W.2d 274 (Tex.Cr.App.1980); *White v. State,* 610 S.W.2d 504 (Tex.Cr.App.1981). Especially noteworthy is *Ross v. State,* 487 S.W.2d 744 (Tex.Cr.App.1972), which states

that fundamental error is error "calculated to injure the rights of the appellant *to the extent that* he has not had a fair and impartial trial." *Id.,* at 745. The *Ross* phrasing has been used in other cases: *Jefferson v. State,* 487 S.W.2d 331 (Tex.Cr. App.1972); *Smith v. State,* 513 S.W.2d 823 (Tex.Cr.App.1974); *Simmons v. State,* 622 S.W.2d 111 (Tex.Cr.App.1981). Given an egregious error, *Ross* correctly states the general definition of fundamental error in a charge.

While we have discerned the basic test for fundamental error, the "fair and impartial trial" phraseology still serves as only a general admonition that fundamental error must involve "egregious harm" in trial. The same idea is contained in the occasional statements that a fundamental error must "go to the very basis of the case," *Bellah v. State,* 415 S.W.2d 418 (Tex.Cr. App.1967); deprive the accused of a "valuable right," *Baker v. State,* 137 Tex.Crim. 218, 129 S.W.2d 317 (1939), overruled on its facts by *Flowers v. State,* 150 Tex.Crim. 467, 202 S.W.2d 462 (1947); or "vitally affect his defensive theory," *Franco v. State,* 141 Tex.Crim. 246, 147 S.W.2d 1089 (1941). Such a basic framework for analysis is probably all that can be expected of any general definition. Deciding how this basic test is to be applied, however, is equally as important as determining the test.

## II.

The vast weight of authority establishes that whenever the accused has claimed fundamental error, including error involving omission of an entire element from the authorization paragraph, the Court has reviewed not only the entire jury charge, but also the state of the evidence in the case, before deciding whether the error was so harmful as to require reversal. E.g., *Canterberry v. State,* 101 Tex.Crim. 550, 275 S.W. 1040 (1925); *Crutchfield v. State,* 68 Tex.Crim. 468, 152 S.W. 1053 (1913).

The modern trend of the Court first to label certain errors "fundamental" then automatically reverse convictions without regard to the nature and harm of the error in

the case, was not necessarily an innovation of *Robinson v. State*, 553 S.W.2d 371 (Tex. Cr.App.1977); but with *Robinson*, supra, this movement became almost suddenly firmly entrenched as a policy of the Court. The reasons can only be gleaned from between the lines—indeed, by studying the cases cited.

In 1977, the Court was barely beginning to grapple with the new penal code; a primary objective of that code had been to consolidate all thefts, all robberies, all rapes, etc., into single proscriptions, acknowledging as elements the features shared in common, so as to reduce or eliminate the highly technical practice generated by the 1925 penal code.

The Court in *Robinson*, however, by treating "alternative theories" within a single new code proscription as totally different offenses (as they had in fact been under the Old Code), effectively reinstated Old Code notions of pleading and charging. While it is clear that due process would be violated *per se* by convicting a person for murder when he had been indicted for a totally different offense such as robbery, it is faulty reasoning to cite such a proposition as authority for finding "fundamental" charge error of the genre created by *Robinson*. See *Brewer*, supra (Vollers, J., dissenting).

The logical extension of the *Robinson* error was that, without regard to the facts of the case, the weight of the evidence or the issues contested by the parties, entering "with intent to commit theft" was treated as mutually exclusive of entering "and committing theft;" [14] receiving property "knowing it was stolen by another" was treated as if such a showing can never prove an exercise of control over property knowing it is "without the owner's consent;" [15] "intentionally causing a death" was treated as never including doing an act which is "clearly dangerous to human life"

with the "intent to cause serious bodily injury;" [16] and though the list of collateral effects of the *Robinson* notion goes on, the nadir was surely reached when a "threat" was held necessarily to exclude an act which "places another in fear." [17]

The truth of the matter is that each and everyone of those results is a product of the erroneous premise fashioned by the Court in cases such as *Robinson:* that "alternative theories" extant within the same penal proscription can never overlap in substance and must be treated both factually and legally, as if they are wholly different offenses containing different elements.

Those kinds of judicial pronouncements engender disrespect for the courts and the law. As a court of last resort we should not be so far removed from reality that we cannot see when common sense coincides with the fair administration of justice. When we do see such coincidence our duty seems clear.

As a statement on how to determine the severity of any egregious error in the charge we cannot improve on the following from the court of appeals in 1890:

"But in determining whether the error is material ... we are to look to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it at all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case,

**14.** *Shaw v. State*, 557 S.W.2d 305 (Tex.Cr.App. 1978).

**15.** *Casey v. State*, 633 S.W.2d 885 (Tex.Cr.App. 1982); *Reynolds v. State*, 547 S.W.2d 590 (Tex. Cr.App.1977) (Opinion on Rehearing).

**16.** *Scott v. State*, 593 S.W.2d 724 (Tex.Cr.App. 1980).

**17.** *Lee v. State*, 577 S.W.2d 736 (Tex.Cr.App. 1979).

as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was it in direct conflict with the State's theory? These are all important matters to be considered in passing upon the [degree of harm] in the omission or error...." [18] *Davis v. State*, 28 Tex.Ct.App. 542, 13 S.W. 994, 995 (1890), writ of error dism'd 139 U.S. 651, 11 S.Ct. 675, 35 L.Ed. 300 (1891).

■ We hold that finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review along the lines of that described above in *Davis*, supra, as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused. See also *Woods v. State*, 653 S.W.2d 1 (Tex.Cr.App.1983) adopting dissenting opinion in *Hill v. State*, 640 S.W.2d 879 (Tex.Cr.App.1982); *Robinson v. State*, 596 S.W.2d 130 (Tex.Cr.App.1980); and *Sattiewhite v. State*, 600 S.W.2d 277 (Tex. Cr.App.1980).

To the extent that it holds any charge error requires "automatic" reversal, *Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr.App. 1979) is overruled, as are all other opinions inconsistent herewith.

### III.

■ Quite understandably, the Fort Worth Court of Appeals found the claimed defect in the application portion of the charge of the trial court amounted to fundamental error. It relied solely on *Messenger v. State*, 638 S.W.2d 883 (Tex.Cr.App. 1982)—one of the decisions following the "automatic" reversal teaching of *Cumbie v. State*, supra. Thus the court of appeals had no occasion to examine the record in order to decide whether the error was so

egregiously harmful as to require reversal. Orderly review procedure and a measure of deference to factual determinations by a court of appeals impel us to return the cause to the court below for it to make such examination in light of considerations expressed in part II of this opinion.

The judgment of the Fort Worth Court of Appeals is reversed and the cause is remanded for further proceedings consistent with this opinion.[19]

ONION, Presiding Judge, concurring in part and dissenting in part.

Article 36.19, V.A.C.C.P., provides:

"Whenever it appears by the record in any criminal action that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial."

Here is a statute dealing with the violation of certain enumerated statutes concerning the court's charge, and which concludes with a requirement that all "objections to the charge" be made at the time of the trial. Yet the majority by its own reading of statutory and decisional law, by removing commas in earlier opinions and reinterpreting them, and by selected excerpts from other cases, concludes "that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error."

The majority would have the phrase "calculated to injure the rights of the defend-

---

18. This passage was couched in terms of determining whether the error "was calculated to injure the rights of the accused" and therefore required reversal even though no objection was raised at trial. Thus it is one of the group of cases mentioned in n. 13, *ante,* and accompanying text, and its imprecise use of the "calculated to injure" language does not affect its analysis.

19. Through his appellate section the Criminal District Attorney of Tarrant County has favored the Court with a comprehensive brief which collected germane authorities and presents them in a thoughtful fashion that assisted us in our deliberations.

ant" apply as the only test for reversible error if there has been a timely objection to the charge, and if there has been "some" harm. It would also lift the phrase "that the defendant has not had a fair and impartial trial" out of the statute and use it as the test for fundamental error, an independent basis for reversal where the error, though not timely objected to, is, if you please, so "egregiously" harmful as to deprive the defendant of a fair and impartial trial.

The majority, which admits that the phrase "unless it appears from the record that the defendant has not had a fair and impartial trial" is of uncertain origin, nevertheless concludes it was "meant to be a statutory enactment of the fundamental error doctrine and is of independent significance ... within Article 36.19."

In other words the Legislature, constitutionally or not, has adopted a fundamental error doctrine to be imposed upon the judiciary of this state without defining it by simply burying the phrase in question into the middle of the statute in question. With this I cannot agree.

The majority commences its discussion by acknowledging at least three prior theories as to the test imposed by language in Article 36.19 as to "calculated to injure" and "fair and impartial trial." The majority then adds:

"It is critical that we acknowledge from the outset the simple fact that no conceivable theory can reconcile the cases written on the subject over the last 130 years. Imprecise language, both statutory and decisional, has destroyed any hope of harmonizing all authoritative statements in any literal sense.

" * * *

"In studying art. 743 and Article 36.19 to determine which, if any, theory is correct, it is clear that one cannot answer that question from the current statute itself. The statute is inherently ambiguous; it can be read dozens of times without revealing with certainty what the Legislature intended."

With this background the majority felt like it was free to interpret the statute in any way it pleased, including the announcement that long ago the Legislature had adopted a fundamental doctrine of independent significance in 1913 which was not clearly discovered until today by the wisdom of the majority.

In explanation, the majority does state:

"Our exegesis [1] of the statute, suggested legislative history of art. 743, is at least as defensible as any other reading of the statute in light of the research, a minuscule portion of which is set out above, does more than the others to respect the meanings which the statutes and caselaw had attached to key phrases in the provision."

There can be no question that over the years there have been numerous interpretations, not always consistent, of Article 36.19 and its forerunner. And it is true that support can be found for any number of different theories. When we reach the point where we begin to talk of "reversible beneficial (to the defendant) error," *Brewer v. State*, 572 S.W.2d 940, 941–944 (Tex.Cr. App.1978) (dissenting opinion), and "harmless fundamental error," it is time to take stock and see where we are.

After study and reexamination of many of the authorities and the legislative history of Article 36.19 and its forerunners, it is my opinion that the statute relates to the situations where Articles 36.14 and 36.15, etc., are disregarded. Thus, where a timely objection or special requested charge has been made, and overruled, the "calculated to injure" or "fair and impartial trial" tests are to be applied to determine whether the error, if any, calls for reversal. Both tests apply to what the majority chooses to call "ordinary reversible error." Despite timely objection, one error in failing to follow the enumerated statutes on the giving of the court's charge may be well calculated, may be well intended to injure the rights of

1. Explanation or critical interpretation of text.

the defendant, while another error, timely objected to, may be due to haste, ignorance of the law, mistake, negligence, omission, oversight, etc., without there being any scheme, any calculation, design or intent to injure the defendant. Nevertheless, this later error may result in depriving the defendant of a fair and impartial trial to which he is entitled. This latter test is a much broader test designed to cover a wider range of situations than that encompassed by the first test.

I find no support for any claim that the Legislature has ever adopted a fundamental error doctrine or a test that must be applied by the judiciary, the third branch of government, to a claim of fundamental error-in the court's charge or indictment, etc. I simply cannot buy the majority's theory that the second test in Article 36.19 was intended to be the sole test to be applied if the courts were passing upon a claimed fundamental error in the court's charge. In 1913, when then Article 743 of the Code of Criminal Procedure was enacted, the fundamental error doctrine had been espoused in several appellate opinions. *Bishop v. State*, 43 Tex. 390 (Tex.1875); *Tuller v. State*, 8 Tex.App. 501 (Crt. of Appeals 1880); *Stewart v. State*, 50 S.W. 459 (Tex. Cr.App.1899); *Leache v. State*, 22 Tex.App. 279, 3 S.W. 539 (Crt. of Appeals 1886); *Ford v. State*, 41 Tex.Cr.R. 1, 51 S.W. 935 (1899); *Jones v. State*, 53 Tex.Cr.R. 131, 110 S.W. 741 (1908). It was not this source of a few reversals that the Legislature sought to curb. The 33rd Legislature in 1913 was concerned with the large number of criminal convictions reversed because of what today's majority refers to as "ordinary reversible error" in the court's charges due to then existing procedural rules. The Legislature sought to require timely objections, etc., to the charge at the time of trial to prevent the trial judge from being sand-bagged by post trial complaint and thus reversed on appeal. If the Legis-

lature had thought it proper to address by legislation the question of what we now refer to as fundamental error in the charge, they could have easily and expressly said so. They did not. The same was true when Article 666 was enacted as part of the 1925 Code of Criminal Procedure and when Article 36.19 was enacted as part of the 1965 Code of Criminal Procedure.

There is no statutory test for determining fundamental error. That is a matter for the courts. Constitutionally the Legislature cannot tell the courts how to decide a case.

A timely objection to a charge, etc., preserves the claimed error, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, *or* unless it appears from the record that the defendant has not had a fair trial and impartial trial." If the claimed error has not been preserved by timely objection, etc., no reversal follows even if it is error in fact unless, of course, it is fundamental error. Naturally, then, every claimed error not properly preserved is asserted to be fundamental error. Not every claimed fundamental error, however, is actual fundamental error.

A fundamental error is a very basis, an underlying material error that affects the foundation of a conviction's validity.[2] It may well be a violation of fundamental fairness, a violation of due process of law, a violation of the due course of the law of the land (Article I, § 19, Texas Constitution).

Early on, before the language was incorporated in any statute, the Supreme Court of Texas in *Bishop v. State*, 43 Tex. 390 (1875), stated a "material deficiency in the charge, not objected to below, but apparent on the record" was deemed to be "an error calculated to injure the rights of the defendant." Other opinions have used the

---

2. In *Bellah v. State*, 415 S.W.2d 418, 421 (Tex.Cr. App.1967), the Court stated:

"In the absence of a proper objection it is only in those cases where the erroneous charge goes to the basis of the case and is contrary to and fails to state the law under which the accused is prosecuted that objections to the charge are considered on appeal as fundamental error. *Garza v. State*, 162 Tex.Cr.R. 655, 288 S.W.2d 785."

"fair and impartial trial" language in discussing fundamental error. There has been no consistency. As the majority notes, other opinions have used the phrase "calculated to injure the rights of the appellant *to the extent that* he has not had a fair and impartial trial." See, e.g., *Ross v. State*, 487 S.W.2d 744, 745 (Tex.Cr.App. 1972). This seemingly is a combining of the two statutory tests in Article 36.19 to some extent and supportive of the first theory discussed by the majority that Article 36.19 applies only to fundamental error and sets no standard for "ordinary reversible error." See *Dowden v. State*, 537 S.W.2d 5, 6, n. 1 (Tex.Cr.App.1976). This, I conclude after further study, is an erroneous concept.

In determining whether there is fundamental error there will naturally be a consideration of whether the claimed error was calculated to injure the rights of the accused or whether he was deprived of a fair and impartial trial, but it must be a material error affecting the very foundation of the conviction's validity. The error must have resulted in actual harm, remarkable or extraordinary in some bad way, of a glaring or flagrant nature. Fundamental error must meet this higher test for harm, a more stringent test than for "ordinary reversible error." Reversals for fundamental error in the charge should be granted only in the most compelling cases.

I fully agree with the majority that if there is a claimed fundamental or "ordinary reversible" error in the charge we must look to the charge as a whole, the evidence, the argument of counsel, the record in its entirety to determine if the jury was misled and if in fact there is reversible error. This approach is not new. *Mace v. State*, 9 Tex.App. 110 (Ct. of Appeals 1880); *Robinson v. State*, 39 S.W. 107 (Tex.Cr.App.1897); *Simnacher v. State*, 43 S.W. 512 (Tex.Cr.App.1897).

In the recent past there has been an increase in the number of the so-called fundamental error per se reversals where the claimed error has been determined to be fundamental error without a discussion of any real harm in the particular case. The "new" approach should change this somewhat, but it should be borne in mind that even if the "new" approach had been utilized in the past cases the same result would have been easily reached in some cases. And in the future there will be cases where the error is so flagrant there will still be a fundamental error reversal per se. Many of the reversals have been directly related to the abandonment in part by this Court of the rule of reading the court's charge as a whole in construing the same, see e.g. *Doyle v. State*, 631 S.W.2d 732 (Tex.Cr.App.1982). And this resulted in large measure from the recent acceptance and use by the majority of this Court of the phrase "application paragraph of the charge" as if one and only one paragraph of the charge applies the law to the facts. This has never been true. In fact, the whole written charge is given for the purpose of "distinctly setting forth the law applicable to the case;" Article 36.14, V.A. C.C.P. By finding a single defect in the exalted "application paragraph" the majority would reverse without consideration of the charge as a whole, or considering whether the jury was in any way misled.

Most importantly, the issues concerning the charges in many cases should not have ever reached the appellate courts. Too frequently the "error" was due to mistake, oversight, and plain sloppiness in the preparation of the charge. It appears that trial judges are allowing court reporters and others to draft the charges, and attempts are made to follow pattern jury instruction forms and old charges without striking inapplicable portions or trying to tailor the form to the allegations of the indictment in the case. There are often few or no objections to these charges, and trial judges are apparently reading the charge to the jury without observing the obvious mistakes therein.[3]

---

3. In *Jackson v. State*, 578 S.W.2d 748, 749 (Tex. Cr.App.1979), it was stated:

"Many cases such as this have recently come before this court. It is difficult to un-

Trial judges should *personally* develop some expertise in the drafting of charges, and supervise the preparation of the same. It should never be assumed that because there is no objection to the charge that it will necessarily pass muster. And when the trial judge reads the charge to the jury, it should not be the first time he has read the charge.

Today's majority reaches out and very selectively chooses certain cases, some not involving charges, and declares they produced bizarre results, and then lectures the court about common sense and the fair administration of justice. If the writer of the majority opinion is concerned about bizarre results and common sense I would suggest he has overlooked cases as *Antunez v. State*, 647 S.W.2d 649 (Tex.Cr.App. 1983); *Braudrick v. State*, 572 S.W.2d 709 (Tex.Cr.App.1978); *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Cr.App.1983); Carriera v. State, 663 S.W.2d 1 (Tex.Cr.App.1984).

In concluding its opinion, the majority simply overrules the leading case of *Cumbie v. State*, 578 S.W.2d 732 (Tex.Cr.App. 1979), to the extent it holds any error in the court's charge requires "automatic" error. There is no further explanation of the *Cumbie* opinion or many cases following it. *Cumbie* set forth four kinds of types of fundamental error in the court's charge which had called for reversal in the past. With the limited surgery performed on *Cumbie* and its progeny, will we be left with four kinds of fundamental error that may be in light of the record "harmless fundamental error"? I would have hoped the majority would go far enough to spare us a doctrine of "harmless fundamental error."

And instead of applying the newly announced rule regarding fundamental error to the instant case which has long pended before this Court, the majority remands the cause to the Ft. Worth Court of Appeals for that court to attempt to apply the new rule. That court followed our previous teachings and now they must apply a new rule of which it was unaware until today.

There is no judicial economy in this move. From this day forward the various Courts of Appeals will be applying the new rule in other cases without any example of how this Court has applied its own rule. Is the purpose to run the new rule up the flag pole to see how many salutes it receives before proceeding to utilize it ourselves?

While I agree with the new rule, I dissent to remanding this cause to the Ft. Worth Court of Appeals for first application of the rule.

For the reasons stated, I concur in part and dissent in part to the results reached.

TEAGUE, Judge, dissenting.

I believe that because of what the majority opinion, authored by Judge Clinton, states and holds, as to when objected to error and unobjected to error in the trial court's final charge to the jury might constitute reversible error, that this Court retreats at least 400 years into the past, at the same time expressly overruling all decisions of this Court that might have been of assistance in making the determination whether error in the court's final charge constitutes reversible error.

In *Ex parte Clark*, 597 S.W.2d 760, 761 (Tex.Cr.App.1980), Judge Truman E. Roberts, who authored that opinion for this Court, stated therein, inter alia, that "the failure of the charge to apply the law to the facts 'impairs the right to trial by jury' and, therefore, by definition, is 'calculated to injure the rights of the defendant ... to a trial by jury,' which right is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10, of the Texas Constitution." Judge Clinton's opinion for the majority of this Court, in stating and holding what it does, unfortunately does not take into account those wise words of wisdom Judge Roberts once uttered for this Court so few years ago.

Henceforth, when it comes to instructing the jury on the law, and the law as applied

---

derstand why so many courts are submitting charges to juries which allow the juries to

convict defendants for offenses not alleged in the indictment...."

to the facts of the case, I believe that it will now be permissible for trial judges of this State to give a jury a flawed jewel, rather than "a gem that has been cut and polished by the hard edge of legal experience obtained from both within and without our criminal justice system." *Doyle v. State,* 631 S.W.2d 732, at 738 (Tex.Cr.App.1982).

After today, harmless error should prevent even the most egregiously worded jury charge from constituting reversible error. Henceforth, there will be no *per se* rule of reversible error because of fundamental error in the court's charge. *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr.App. 1979), and like decisions of this Court, are no more as they have been expressly overruled by today's majority opinion. No longer are there any cases that can be used as guides.

Judge Clinton states in the opinion he authors for the majority of this Court that the following nebulous rules will now govern whether an erroneous instruction in the court's charge to the jury will constitute reversible error:

If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of the defendant,' which means no more than that there must be some harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless. On the other hand, if no proper objection was made at trial and the accused [claims on appeal] that the error was 'fundamental,' he will obtain a reversal only if the error was so egregiously harmful that he 'has not had a fair and impartial trial' ..." The harm that is inflicted by such an erroneous charge must 'be assayed in light of the entire jury charge, the state of the evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

Unfortunately, Judge Clinton, for the majority, fails to give the members of the bench and bar of this State a hypothetical example of just when both objected to error in the court's charge and error in the court's charge to which no objection was leveled might somehow rise to the level of reversible error under the new rules. Perhaps, however, as to either, unobjected to error in the court's charge or objected to error in the court's charge, none can be conjured up by his brilliant mind.

When will the members of the bench and bar of this State know that error in the court's final charge to the jury constitutes reversible error? Perhaps in the future, we will learn, much like Lot's wife did, at the moment when the event occurs.

In light of what the majority opinion ultimately holds, it is obvious to me, if no one else, that much of what this Court has attempted to do in the past ten years-in its efforts to admonish trial judges to fulfill the responsibility that the law casts upon them in carefully instructing the jury on the law, and the law as applied to the facts of the particular case-no longer has any real meaning.

In *Doyle v. State,* supra, an opinion that I proudly authored for the Court, I stated the following: "Over 400 years ago, it was written: 'For the office of 12 men is no more than to enquire to Matters of Fact and not to adjudge what the law is, for that is the Office of the Court and not of the jury,'" 1 *Plowden* 110a, 114a (K.B. 1554), and added a postscript: "But in its instructions to the jury, the trial court must correctly apply the law to the facts of the case." (737). Alas, those words also no longer have any real meaning.

Notwithstanding what the majority of this Court now holds in the area of the law that governs giving the jury correct instructions on the law, and the law as applied to the facts of the case, I hope and pray that most trial judges of this State will continue to believe that the final charge to the jury represents "a gem that has been cut and polished by the hard edge of legal experience obtained from both within and without our criminal justice sys-

tem," rather than something that resembles a tasteless smorgasbord.

To the majority's efforts to have our jurys served with flawed jewels, and a tasteless smorgasbord, I respectfully dissent.