IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-044-CR





JAMES WILLARD COLLINS, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT



NO. 92R-065, HONORABLE DAN R. BECK, JUDGE PRESIDING



 





 After the jury found appellant guilty of the offense of aggravated robbery, Tex.
Penal Code Ann. § 29.03 (West Supp. 1993), the court assessed punishment at confinement for
seventy-six years. Appellant asserts four points of error, contending that the trial court erred by: 
(1) attaching a verdict form to its charge that denied appellant a fair and impartial trial; (2)
overruling appellant's objection to hearsay testimony; and (3) & (4) overruling appellant's
objections to evidence of extraneous crimes, wrongs or acts. We overrule appellant's points of
error and affirm the judgment of the trial court.

 Appellant has filed a motion to represent himself on this appeal. He tendered this
motion for filing on September 20, 1993, fifteen weeks after his appointed attorney filed a brief
on his behalf, six weeks after the State filed its brief, and two weeks after the cause was submitted
for disposition on briefs.

 An appellant has the right to reject the assistance of counsel and represent himself. 
Faretta v. California, 422 U.S. 806, 819 (1975); Webb v. State, 533 S.W.2d 780, 784 (Tex.
Crim. App. 1976). But the right of self-representation is not a license to capriciously upset the
appellate timetable or to thwart the orderly and fair administration of justice. Webb, 533 S.W.2d
at 784. It is the opinion of this Court that, except in extraordinary circumstances, it is
inconsistent with the orderly administration of justice to entertain a request for self-representation
first made after the State's brief has been filed and the cause is ready for submission. Cf.
Hubbard v. State, 739 S.W.2d 341 (Tex. Crim. App. 1987) (a request to dismiss appointed
counsel and proceed pro se was timely even though made after defense counsel had filed his
brief). Such extraordinary circumstances are not shown to be present in this cause. Therefore,
appellant's motion to proceed pro se is overruled as untimely.

 Tommy and Gladys Brewer were robbed at gunpoint by two masked men as they
were leaving their home in rural Fayette County about 8:00 a.m. on August 22, 1992. The
robbers, Hugh Edward Elledge and his half-brother, Dale Roy Howell, were apprehended a short
time later by Department of Public Safety Trooper Barry Bettis. A search of the robbers' vehicle
resulted in the recovery of both the fruits and implements of the crime.

 Elledge and Howell, witnesses for the State, testified that they committed the
robbery at the behest of appellant. Appellant, the former son-in-law of the victims, furnished
them with a .410 sawed-off shotgun, a 357 Magnum pistol, stocking masks, gloves, rope and an
automobile. In addition to the implements for the robbery, Elledge related that appellant furnished
them with powder cocaine prior to the crime. The proceeds from the robbery were to be split
three ways between appellant, Elledge and Howell.

 In his first point of error, appellant contends the verdict forms attached to the
court's charge denied him a fair trial, because the verdict alternatives were phrased in such a way
as to lead the jury to believe that it could acquit appellant only in the event that the jury found
beyond a reasonable doubt that he was not guilty. The phrase "beyond a reasonable doubt" was
omitted under the guilty option. The other option provided: "We, the jury, having heard the
evidence, find the defendant not guilty beyond a reasonable doubt, of aggravated robbery."

 In light of appellant's failure to object to the verdict forms in the trial court, we
must determine whether the misstatement of the burden of proof in the forms constituted
fundamental error. The standards for determining both ordinary reversible error and fundamental
error in the court's charge are set forth in Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App.
1984):



If the error in the charge was the subject of a timely objection in the trial court,
then reversal is required if the error is `calculated to injure the rights of
defendant,' which means no more than that there must be some harm to the accused
from the error. In other words, an error which has been properly preserved by
objection will call for reversal as long as the error is not harmless.


 On the other hand, if no proper objection was made at trial and the accused
must claim that the error was `fundamental,' he will obtain a reversal only if the
error is so egregious and created such harm that he `has not had a fair and
impartial trial'--in short `egregious harm.'


 In both situations the actual degree of harm must be assayed in light of the
entire jury charge, the state of the evidence, including the contested issues and
weight of probative evidence, the argument of counsel and any other relevant
information revealed by the record of the trial as a whole.



Id. at 171.

 The body of the charge included instructions requiring the State to prove every
element of the offense beyond a reasonable doubt; the law relative to the presumption of
innocence; that a defendant is not required to prove his innocence or produce any evidence; and
that in the event the jury has a reasonable doubt as to the defendant's guilt, "You will acquit him
and say by your verdict `Not Guilty.'" The State and the appellant advised the jury during voir
dire that the burden was on the State to prove appellant's guilt beyond a reasonable doubt. 
Throughout jury argument reference was made to the State's burden of proof by all parties,
defense counsel directing the jury to that portion of the charge placing the burden on the State to
prove appellant's guilt beyond a reasonable doubt. After a review of all relevant portions of the
record pursuant to the requirements of Almanza, we conclude that the errors in the verdict forms
were not so egregious as to deprive appellant of a fair and impartial trial. Appellant's first point
of error is overruled.

 In his second point of error, appellant urges that the trial court erred in overruling
his objection to the hearsay testimony of Mike Ramos who testified that Elledge told him three
months before the robbery that appellant had asked him to rob the Brewers.

 A statement is not hearsay, if "consistent with his [declarant's] testimony and is
offered to rebut an express or implied charge against him of recent fabrication or improper
influence or motive." Tex. R. Crim. Evid. 801(e)(1)(B). To be admissible, the prior consistent
statement must have been made before the motive for fabrication came into existence. Fleming
v. State, 819 S.W.2d 237, 246 (Tex. App.--Austin 1991, pet. ref'd).

 Under cross-examination by defense counsel, Elledge denied having received any
consideration for testifying for the State. However, Elledge acknowledged that he "ended up
pleading for less" than what the State had offered. Defense counsel further cross-examined
Elledge about his motive to testify for the State:



Q: So what you are saying is that you just agreed to testify against Mr. Collins
[appellant] just for nothing? You just did that because you were a good
guy. Is that right?


A: Yes.



The thrust of defense counsel's cross-examination of Elledge implied that Elledge and Howell
were solely responsible for the robbery. Defense counsel asked Elledge if it was possible that he
took the keys to the car used in the robbery when appellant was not at home, and "[m]aybe
liberated the pistols while he [appellant] was not there." In addition, defense counsel extensively
cross-examined Elledge about appellant showing him the location of the victim's house, implying
that Elledge had been there previously. The implication of fabrication was amplified during cross-examination when Elledge admitted having a prior conviction for burglary, misdemeanor
convictions and being a user of cocaine. We conclude that the testimony of Ramos about Elledge
telling him that three months before the robbery appellant had asked him to rob the Brewers is a
prior consistent statement admissible to rebut implied charges of recent fabrication, improper
influence and motive. Appellant's second point of error is overruled.

 In points of error three and four, combined by appellant for discussion, appellant
urges that the trial court erred in admitting testimony of State witnesses Kimberly Collins and
Benny Hahn about appellant's extraneous crimes, wrongs and acts.

 Texas R. Crim. Evid. 404 provides in pertinent part:



(a) Character evidence generally. Evidence of a person's character or a trait of
his character is not admissible for the purpose of proving that he acted in
conformity therewith on a particular occasion, . . .


(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts
is not admissible to prove the character of a person in order to show that he acted
in conformity therewith. It may, however, be admissible for other purposes, such
as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident. . . .



Benny Hahn testified that he shared a cell with appellant in Fayette County in September 1992. 
Hahn related that appellant told him that he was in jail for the armed robbery of the Brewers; that
he (appellant) "thought it up" and a "guy named Huey [Elledge] and Dale Roy [Howell] actually
did the robbery"; and that appellant had arranged for a prior robbery of the Brewers. Hahn stated
that in exchange for appellant's help in posting bail bond for him, Hahn was "suppose to go to
the old people's [Brewers'] house and rob them and get rid of them." A map appellant drew
showing the location of the Brewers' home was identified by Hahn and admitted in evidence. 
Hahn further testified that appellant told him that "I was to get out and take care of the Brewers,
that he [appellant] would be able to get off his case and then he could take care of both our cases." 
After appellant's release from jail, appellant furnished Hahn with a "derringer" and a car. Prior
to Hahn deciding not to fulfill his part of the deal, appellant advised Hahn, "It was definite. I
needed to get rid of the Brewers and go see Gary Elledge and get him to tell his kids [Hugh
Elledge and Dale Roy Howell] that they didn't have to testify."

 A hearing was held out of the presence of the jury on appellant's motion to exclude
extraneous offenses. The hearing was devoted to the question of the admissibility of evidence that
appellant attempted to have the Brewers killed in order that there would be no complaining
witnesses. After overruling appellant's motion, the court advised defense counsel, "You will have
a running objection to all the testimony from any witness who talks about any extraneous offense
or any relationship to any alleged extraneous offense."

 Threats by an accused to kill witnesses if they tell anyone about the crime
committed by the accused reflect a "consciousness of guilt." See Brown v. State, 657 S.W.2d
117, 119 (Tex. Crim. App. 1983). "Consciousness of guilt" is one of the strongest kinds of
evidence of guilt and constitutes an exception to the general rule prohibiting the admission of
extraneous offenses. See Torres v. State, 794 S.W.2d 596, 598-99 (Tex. App.--Austin 1990, no
pet.). No error is shown in the admission of Hahn's testimony relative to appellant's effort to
have Hahn "get rid" of the Brewers.

 Appellant also complains of the admission of Hahn's testimony that
appellant told him of a previous effort to get someone to rob the Brewers. Our disposition of
point of error number two concerning the admissibility of testimony about appellant's effort to get
Elledge to rob the Brewers three months prior to the instant offense is dispositive of appellant's
contention.

 In addition, appellant complains of the admission of Hahn's testimony about what
appellant told him concerning the following extraneous offenses or acts: an incident in which a
woman died of a drug overdose in appellant's house; appellant's ability to conceal drugs in a metal
container; appellant's connection with "Colombians"; and appellant's experience in making drug
"runs up north." Appellant also complains of Hahn's testimony about appellant buying cocaine
and selling it to prostitutes while appellant and Hahn were in Houston.

 Appellant's daughter, Kimberly Collins, testified as a witness for the State. 
Appellant complained of her testimony about appellant manufacturing and selling drugs, pimping
prostitutes, and appellant's statement to her that "he was going to have to beat up some of his
whores because they weren't paying him." In addition, appellant directs our attention to her
testimony about an incident that occurred when she was a little girl concerning appellant having
shot at the occupants of a car that passed him on the wrong side of the road. 

 The hearing on appellant's motion to exclude extraneous offense occurred prior to
Kimberly's testimony about appellant telling her he "would pop a cop in their ass if the Brewers
tried to press charges on him." Appellant never objected any further to extraneous offenses except
to receive the court's affirmation that he still had a running objection after Hahn was asked by the
prosecution if appellant had told him about his background and why he was in jail.

 When evidence of the alleged extraneous offenses was offered in evidence,
appellant did not lodge timely objections, nor state the specific grounds for the ruling he desired. 
See Tex. R. App. P. 52(a). While we recognize that a running objection will sometimes preserve
a complaint about the admission of evidence, it must not encompass too broad a reach of subject
matter over too broad a time or over different witnesses. See Satterwhite v. State, 786 S.W.2d
271, 283 n.4 (Tex. Crim. App. 1989), cert. denied, 111 S.Ct. 226 (1990). Despite the fact that
appellant's objection to the trial court was directed toward testimony concerning violence to the
Brewers, we will consider the merits of appellant's complaint.

 Prior to the hearing in which the trial court granted appellant a running objection,
Elledge testified without objection that appellant was living with two prostitutes and "supplying
them with drugs." He stated that appellant was selling drugs after he lost his machine shop and
had made a silencer for guns in violation of federal law. Elledge further testified that appellant
did "insurance jobs . . . stealing stuff and then the people turning it in and getting the money for
[it], knowing that it is stolen." In addition to Elledge's unobjected to testimony, evidence of
appellant's propensity for violence was shown by his efforts to get rid of the Brewers.

 Assuming, arguendo, that the running objection preserved evidence of subsequent
extraneous offenses for review, we find the evidence harmless beyond a reasonable doubt in light
of other evidence admitted without objection that established substantially the same evidence of
appellant's character as did the admission of the complained-of testimony. See Mayes v. State,
816 S.W.2d 79, 88 (Tex. Crim. App. 1991); Tex. R. Crim. Evid. 81(b)(2). Appellant's third and
fourth points of error are overruled.


 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Powers, Jones and Davis*

Affirmed

Filed: October 6, 1993

Do Not Publish


















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).