CR5-736 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00736-CR







Carroll Lee Knight, Appellant



v.



State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL

DISTRICT

NO. 94-802-K368, HONORABLE BURT CARNES, JUDGE PRESIDING







 Carroll Lee Knight appeals from his conviction for attempted capital murder and burglary
of a habitation. Tex. Penal Code Ann. §§ 15.01, 19.03(a)(7)(A) and 30.02(d)(1)(West 1994) ("Penal
Code"). The jury assessed punishment at sixty years' confinement on the attempted capital murder offense
and twenty years' confinement on the burglary offense. The jury made an affirmative finding as to the use
or exhibition of a deadly weapon on each offense. We will affirm the trial court's judgment.



Background


Facts

 At the time of the offense, appellant and Kimberly Nelson, one of the victims, had had a
long, stormy relationship. They had been living together, but Nelson had been attempting to end the
relationship, to the extent of ordering appellant to move out and securing a restraining order against him. 
During the course of their relationship, appellant and Nelson had purchased at least two houses. (1) The
house in which the offense occurred (the "Brushy Creek house") served as Nelson's residence. She had
insisted that appellant occupy another jointly acquired piece of property. Appellant had been warned to
stay away from the Brushy Creek house. (2)

 Appellant, disguised in a wig and either a dress or a shirt long enough to appear to be a
dress, entered the Brushy Creek house through a window because the locks had been changed. He
claimed he was attempting to retrieve bicycles belonging to himself and his son. Accompanied by Robert
Jagitsch, a friend and neighbor, Nelson entered the house and discovered appellant. Appellant, using a
kitchen knife he picked up in the house, first stabbed Nelson, then Jagitsch, who wrestled the knife from
appellant and stabbed him. Nelson fled to a neighboring house and called for help. Both Nelson and
Jagitsch suffered life-threatening wounds. Appellant, who also suffered serious wounds, drove himself to
Garland, where he was admitted to a hospital, treated, and arrested.

 Appellant was indicted for the attempted capital murder of Kimberly Nelson. The "capital
element" was the attempted murder of Robert Jagitsch. See Penal Code § 19.03(a)(7)(A). He was also
indicted for the burglary of Nelson's residence.

Points of Error

 Appellant brings four points of error in his original brief. We will grant appellant's motion
to file a supplemental brief, which raises an additional point of error. Appellant brings three points of error
contending that the charge was erroneous because it failed: to instruct the jury that "intent to kill" is a
material element of attempted capital murder (point one); to give a "sudden passion" instruction with regard
to both victims (point two); and to give a correct "mistake of fact" instruction (point four). He also contends
that the State impermissibly commented on his failure to testify at the punishment stage (point three), and
that counsel rendered ineffective assistance (point five).

Charge Error


 Appellant's first three points of error concern the charge. In reviewing a claimed jury
charge error the appellate court uses a two-step process. First, the court must determine if error exists,
and second it must determine whether the error caused sufficient harm to warrant reversal. Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); Abdnor v. State, 871 S.W.2d 722, 731-32 (Tex.
Crim. App. 1994); Tex. R. App. P. 81(b)(2). If appellant properly objected at trial, then the court must
only find "some harm" to reverse the conviction. Abdnor, 871 S.W.2d at 732.

Intent to Kill

 In his first point of error, appellant complains of the trial-court failure to submit his
requested instruction that "intent to kill" is a material element of attempted capital murder. Appellant
objected to the charge on this basis. It is rather difficult to discern the exact nature of appellant's complaint: 
in his brief he apparently complains of the failure to use the word "kill." In oral argument, appellant
complained that the words "or knowingly" should have been omitted from the definition of murder in the
jury charge.

 The trial court instructed the jury on the elements of attempted capital murder. The charge
defined attempt and intent. The charge then defined murder by tracking the Penal Code language,
"Intentionally or knowingly causes the death of an individual;. . . ." Penal Code § 19.02(b)(1).

 Appellant relies on several cases for the proposition that in an attempted murder case the
jury must be instructed on "intent to kill." Flanagan v. State, 675 S.W.2d 734, 741 (Tex. Crim. App.
1984); Caraveo v. State, 752 S.W.2d 18, 19 (Tex. App.--Fort Worth 1988, no pet.). However, those
cases concerned the problem that arose when the Penal Code was amended to add a general "attempt"
section that applied to various offenses. Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 15.01, 1973 Tex.
Gen. Laws 883, 910. The issue that arose occurred under one definition of murder: that the actor intended
to cause serious bodily injury, committed an act clearly dangerous to life, and that the act caused death. 
The court of criminal appeals first held that, under the new general attempt statute, a defendant with only
the intent to cause serious bodily injury nevertheless could be convicted of attempted murder. Baldwin
v. State, 538 S.W.2d 615, 616 (Tex. Crim. App. 1976), rev'd, Flanagan, 675 S.W.2d at 742. (3) 
Flanagan later held that an intent to kill, as opposed to an intent to cause serious bodily harm, was
necessary to support an attempted murder conviction. Flanagan, 675 S.W.2d at 742.

 However, these cases do not hold that the charge must literally use the word "kill." Neither
does the word "kill" have a statutorily defined meaning in the Penal Code. Therefore, we presume that the
legislature intended it to have its ordinary meaning. Morrow v. State, 862 S.W.2d 612, 614 (Tex. Crim.
App. 1993). One definition for "kill" is "cause the death of." Webster's Third New International
Dictionary 1242 (Philip B. Gove ed., 1986). In this cause, the charge told the jury that it had to find from
the evidence that appellant "with specific intent to commit the offense of capital murder, attempted to cause
the death of an individual, Kimberly Nelson, by stabbing her with a knife, during the same criminal
transaction in which he attempted to murder more than one person. . . ." Therefore, the charge, taken as
a whole, told the jury that it needed to find appellant intended to murder, i.e., cause the death of Kimberly
Nelson at the same time he intended to cause the death of another person; in other words, it told the jury
that it needed to find appellant intended to kill, an ordinary meaning for "cause the death of." The charge
did not allow appellant to be convicted for attempted capital murder based only on an intent to cause
serious bodily harm as prohibited in Flanagan. 

 The use of the phrase "intentionally or knowingly" is an instruction approved in numerous
cases. We find no error, much less harmful error. Tex. R. App. P. 81(b)(2). We overrule point of error
one.

"Voluntary Manslaughter"

 In his second point of error, appellant contends that the trial court erred at the punishment
stage of trial in failing to submit to the jury an instruction on sudden passion with respect to the attempted
murder of Jagitsch. The court submitted such an instruction with regard to the attempted murder of Nelson. 
Appellant objected to this omission.

 Appellant correctly notes that, at the punishment stage of a murder trial, the defendant may
raise the issue whether he caused the death under the immediate influence of sudden passion arising from
adequate cause. Penal Code § 19.02(d). Appellant argues along the following lines. He was tried for
attempting to murder Nelson while attempting to murder Jagitsch. Therefore, the State had to prove two
attempted murders. If appellant acted out of sudden passion with regard to one attempted murder, then
the degree of the felony would be reduced under section 19.02(d), and there would no longer be two
attempted murders; therefore, if he proved sudden passion with regard to Jagitsch, he could not be
sentenced for attempted capital murder with regard to Nelson because the State then would lack the
aggravating element that makes the offense attempted capital murder.

 Appellant bases his argument on the erroneous premise that section 19.02(d) defines a
separate offense comparable to the former voluntary manslaughter offense. Before the 1993 revisions to
the Penal Code, (4) voluntary manslaughter was an offense classified as criminal homicide. The distinguishing
characteristic between the offense of murder and the offense of voluntary manslaughter was the sudden
passion consideration. Cerda v. State, 557 S.W.2d 954, 958 (Tex. Crim. App. 1977). "Sudden passion"
was a defense to murder that reduced murder to the lesser included offense of voluntary manslaughter. 
Braudrick v. State, 572 S.W.2d 709, 711 (Tex. Crim. App. 1978), cert. denied, 440 U.S. 923 (1979). 
If the evidence raised the issue of sudden passion, the State had to disprove sudden passion beyond a
reasonable doubt. Id.

 The 1993 revisions to the Penal Code removed "voluntary manslaughter" as a type of
criminal homicide. Instead, at the punishment stage following a conviction for murder, the defendant may
raise the sudden passion issue. Penal Code § 19.02(d). The statute says that, "[if] the defendant proves
the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second
degree." Id. It cannot have been the intent of the legislature to allow the punishment-stage consideration
of "sudden passion" to change the offense for which a defendant was convicted. If so, it would have left
voluntary manslaughter as a form of criminal homicide to be decided at the guilt-innocence stage of trial. 
The sudden passion instruction serves only to mitigate punishment. Therefore, even if appellant had proved
that he attempted to kill Jagitsch under the immediate influence of sudden passion, the offense still would
have been attempted murder and the attempt to kill Nelson still would have been an attempted murder in
the course of a second attempted murder. We overrule appellant's second point of error.



Mistake of Fact Instruction

 In his fourth point of error, appellant contends that the trial court's instruction on mistake
of fact was incorrect because it forced appellant to disprove Nelson's ownership of the home of which he
was convicted of burglary in the first degree. Appellant objected at trial.

 The charge given to the jury on the burglary offense stated that a person commits the
offense of burglary if "without the effective consent of the owner" he enters the habitation. Penal Code §
30.02(a). The charge defined "owner" as a person who has title to the property, possession of the
property, whether lawful or not, or a greater right to the possession of the property than the actor. Penal
Code § 1.07(35)(A). The court instructed the jury that it is a defense to an offense that a person through
mistake formed a reasonable belief about a matter of fact and that mistaken belief negated the culpability
required for the commission of the offense. Penal Code § 8.02(c). The charge said that if the jury found
or had a reasonable doubt that the defendant, through mistake, formed a reasonable belief about a matter
of fact, namely that Nelson was the owner of the habitation, and the mistaken belief negated the kind of
culpability required for the commission of the offense, then it should acquit appellant of the offense.

 Appellant's proposed instruction read:



Therefore, if you find and believe from the evidence that Defendant, Carroll Lee Knight,
on the occasion in question through mistake reasonably believed that Carroll Lee Knight
was the owner of the habitation, and that acting under such belief he entered the habitation,
or if you have a reasonable doubt thereof, then you will find the Defendant not guilty of the
charges in Count 1.



 The charge as given by the court, read in its entirety, means that appellant has a defense
to the burglary offense if he formed a reasonable belief through mistake about the fact of Nelson's
ownership; i.e., that she held title, was in possession, or had a greater right of possession. Ultimately, the
charge as given reaches the same result as his proposed charge--he reasonably believed that he was the
owner of the property and therefore did not need Nelson's consent to enter. Because the court's charge
was adequate to protect appellant's rights, we overrule appellant's fourth point of error.



Improper Jury Argument


 In his third point of error, appellant contends that the prosecutor made an impermissible
reference to his failure to testify during the punishment stage of trial. Appellant complains of the following: 
"Similarly, the Judge tells you that it would be misconduct for you to discuss the fact that the Defendant has
not testified at this phase of the trial. Do not talk about this fact. It would be misconduct." Appellant did
not object to this argument.

 That the prosecution may not comment on the failure of an accused to testify is a well-established principle and not in dispute. Montoya v. State, 744 S.W.2d 15, 34 (Tex. Crim. App. 1987),
cert. denied, 487 U.S. 1227 (1988). However, the prosecution's remark simply restates the court's
instruction in the charge that the jury is not to consider the failure of the defendant to testify against him and
the instruction that in their deliberations they are not to "allude to, comment on, or in any manner refer to
the fact that a defendant has not testified."

 Ultimately, any analysis of claimed error in the jury argument will end in the question of
whether the error harmed the defendant. Tex. R. App. P. 81(b)(2). Without analyzing whether appellant
waived error, we can conclude that no harmful error occurred. The prosecution repeated the jury
instruction without elaboration. Appellant offers no persuasive argument how that act could have harmed
defendant, nor does he claim the jury instruction itself was improper. We overrule appellant's third point
of error.



Ineffective Assistance


 In his fifth point of error, appellant contends that he received ineffective assistance of
counsel because counsel failed to request a jury instruction on criminal trespass as a lesser included offense
of burglary. Penal Code § 30.05. He contends that this failure deprived him of his Sixth Amendment right
as stated by this Court in Waddell v. State, 918 S.W.2d 91 (Tex. App.--Austin 1996, no pet.).

 For an appellate court to find ineffective assistance, appellant must show (1) counsel's
representation fell below a minimum objective level of reasonableness under prevailing professional norms;
and (2) had the attorney's representation not fallen below the accepted standard, there is a reasonable
probability that the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). In determining whether
counsel's trial performance was deficient, judicial scrutiny must be highly deferential. A reviewing court
must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable
professional assistance. Strickland, 466 U.S. at 689. An ineffectiveness-of-counsel claim cannot be
demonstrated by isolating one portion of counsel's representation, but instead must be judged on the totality
of the representation. Strickland, 466 U.S. at 670; McFarland v. State, 845 S.W.2d 824, 843 (Tex.
Crim. App. 1992), cert denied, 508 U.S. 963 (1993).

 Failure to request a jury instruction can render assistance ineffective when, under the
particular facts of the case, in addition to establishing that the trial court would have erred in refusing the
instruction had counsel requested it, appellant also shows that the failure of counsel to request the instruction
could not be considered sound trial strategy. Jackson v. State, 877 S.W.2d 768, 772 (Tex. Crim. App.
1994); Waddell, 918 S.W.2d at 94.

 The State responds that (1) we should not consider this point because no motion for new
trial hearing developed the issue of ineffective assistance and (2) we should presume that this was a trial
strategy choice, citing Lopez v. State, 838 S.W.2d 758, 759 (Tex. App.--Corpus Christi 1992, no pet.)
(strategy was to seek acquittal; no witnesses other than defendant to support defensive theory).

 Even if we assume that the trial court would have had to give the charge on criminal
trespass, we think that counsel, in choosing not to request an instruction on the lesser included offense,
made a strategic choice within the range of professionally acceptable choices. Counsel offered a "mistake
of fact" defense that, under the facts of this case, could have resulted in an acquittal on the burglary charge. 
An instruction on the lesser included offense of criminal trespass would have been contradictory to the
mistake of fact defense. Criminal trespass requires a defendant to have notice that entry is forbidden. 
Penal Code § 30.05(a)(1). This would conflict with the claim that appellant mistakenly thought he had a
right to be on the premises. Such a conflict could have caused confusion on the jury's part. Further, as
noted by the State, this case is similar to Lopez in which the defendant himself provided the only evidence
in support of the lesser included offense.

 Finally, the record contains no evidence of the reasoning behind counsel's actions and we
can only speculate on trial counsel's reasons for not requesting an instruction on criminal trespass. See
Vasquez v. State, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (dissent suggests that direct appeal not
best vehicle for developing ineffective assistance claim). Due to this lack of evidence we are unable to
conclude that appellant's trial counsel's performance was deficient. See Jackson, 877 S.W.2d at 771. We
overrule appellant's fifth point of error.

 Having overruled all of appellant's points of error, we affirm the trial court's judgment of
conviction and sentence.



 

 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: December 12, 1996

Do Not Publish

1.   Appellant and Nelson purchased the houses in an informal, unwritten, arrangement. The
exact legal status of each one's interest is not clear.
2.   Kimberly sought a restraining order against appellant shortly before the events in question. 
The mailing address for her residence, the Brushy Creek house, was "Austin, TX 78717." 
According to her testimony, in her application for a restraining order, she had listed Travis
County for her work location, and correctly listed Williamson County for her residence. The
restraining order, issued by County Court at Law Number Two of Travis County, commanded appellant
to stay away from Kimberly's workplace and residence, both in Travis County. However, a Williamson
County Sheriff's Department sergeant, who responded to a disturbance call, warned appellant that he
would be arrested for criminal trespass if he appeared at the Brushy Creek house again. He testified that
he knew he was subject to arrest if he appeared on that property again. We are not dealing with enforcing
the restraining order in this cause; only appellant's knowledge or belief concerning the ownership of the
property and his right to enter the property are issues.
3.   See generally James Arthur Vaught, Note, Attempted Murder: Should Specific Intent to Kill be
Required?, 31 Baylor L. Rev. 243 (1979) (dealing with problems arising from adoption of general criminal
attempt statute in 1973 and application to attempted murder offense).
4.   Penal Code, 73d Leg., R.S., ch. 900, § 1, 1993 Tex. Gen. Laws 3586.


, appellant also shows that the failure of counsel to request the instruction
could not be considered sound trial strategy. Jackson v. State, 877 S.W.2d 768, 772 (Tex. Crim. App.
1994); Waddell, 918 S.W.2d at 94.

 The State responds that (1) we should not consider this point because no motion for new
trial hearing developed the issue of ineffective assistance and (2) we should presume that this was a trial
strategy choice, citing Lopez v. State, 838 S.W.2d 758, 759 (Tex. App.--Corpus Christi 1992, no pet.)
(strategy was to seek acquittal; no witnesses other than defendant to support defensive theory).

 Even if we assume that the trial court would have had to give the charge on criminal
trespass, we think that counsel, in choosing not to request an instruction on the lesser included offense,
made a strategic choice within the range of professionally acceptable choices. Counsel offered a "mistake
of fact" defense that, under the facts of this case, could have resulted in an acquittal on the burglary charge. 
An instruction on the lesser included offense of criminal trespass would have been contradictory to the
mistake of fact defense. Criminal trespass requires a defendant to have notice that entry is forbidden. 
Penal Code § 30.05(a)(1). This would conflict with the claim that appellant mistakenly thought he had a
right to be on the premises. Such a conflict could have caused confusion on the jury's part. Further, as
noted by the State, this case is similar to Lopez in which the defendant himself provided the only evidence
in support of the lesser included offense.

 Finally, the record contains no evidence of the reasoning behind counsel's actions and we
can only speculate on trial counsel's reasons for not requesting an instruction on criminal trespass. See
Vasquez v. State, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (dissent suggests that direct appeal not
best vehicle for developing ineffective assistance claim). Due to this lack of evidence we are unable to
conclude that appellant's trial counsel's performance was deficient. See Jackson, 877 S.W.2d at 771. We
overrule appellant's fifth point of error.

 Having overruled all of appellant's points of error, we affirm the trial court's judgment of
conviction and sentence.



 

 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: December 12, 1996

Do Not Publish

1.   Appellant and Nelson purchased the houses in an informal, unwritten, arrangement. The
exact legal status of each one's interest is not clear.
2.   Kimberly sought a restraining order against appellant shortly before the events in question. 
The mailing address for her residence, the Brushy Creek house, was "Austin, TX 78717." 
According to her testimony, in her application for a restraining order, she had listed Travis
County for her work location, and correctly listed Williamson County for her residence. The
restraining order, issued by County Court at Law Number Two of Travis County, commanded appellant
to stay away from Kimberly's workplace and residence, both in Travis County. However, a Williamson
County Sheriff's Department sergeant, who responded to a disturbance call, warned appellant that he
would be arrested for criminal trespass if he appeared at the Brushy Creek house again. He testified that
he knew he was subject to arrest if he appeared on that property again. We are not dealing with enforcing
the restraining order in this cause; o