COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| NICKY PENA, | | No. 08-07-00107-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | 399th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Bexar County, Texas |
| | § | |
| Appellee. | | (TC# 2006-CR-0486C) |
| | § | |
| | § | |

**O P I N I O N**

In the early morn of November 13, 2005, David Diaz was awakened by his wife's alarm that someone was outside calling for him. Mr. Diaz went outside and was asked about his brother-in-law. As he was talking, two other men appeared; one had a pistol. At trial, Mr. Diaz identified the man who was outside calling him as Jesse Aguirre. He also identified the man with the pistol as the defendant, Nicky Pena, whom he had not known. Mr. Pena aimed the pistol at Mr. Diaz, and they began going through his pockets taking his wallet, money, birth certificate, and social security card. The men hit Mr. Diaz, and asked where his brother-in-law lived. Then they forced Mr. Diaz inside his home. The men looked around the house, and began taking things from the home including two televisions. They put everything in a truck and left. Mr. Diaz's sister, who lived there, told a neighbor who was walking by what had happened and asked him to call the police.

Officer James Ybarra was one of two police officers who responded to the call. They met

with Mr. Diaz who told them some people had just robbed him at gunpoint, and identified one of the robbers by a nickname, said the robber lived down the street in some apartments, and they had left in a maroon vehicle with a white driver's side door. Officer Ybarra went to go look for the suspects. He looked through the apartment complex, but did not see the vehicle, and headed back to Mr. Diaz's home. As he was leaving, he ran into Sergeant Martinez who had come down to look for the vehicle as well. While headed towards the home, they saw a maroon truck with a white driver's side door headed in the opposite direction. They both turned around and flipped on their overhead lights. The truck occupants fled in response to the lights. The officers chased after the truck, and it ultimately crashed into a pole. The driver of the truck attempted to flee on foot, but Officer Ybarra caught him. Sergeant Martinez dealt with the passengers of the truck. There were four people including the driver in the truck. Neither the gun nor the stolen property was found on the suspects or in the truck.

Officer Trigo testified that he took Mr. Diaz to where the suspects were located to conduct a one-on-one lineup. The suspects were separated in different patrol cars, and brought out one at a time for identification by Mr. Diaz. The suspect was illuminated by the patrol cars' overhead lights, high beams, and spotlights. Mr. Diaz identified the first suspect as Mr. Aguirre who was "the main one" in the robbery. Appellant was the second suspect brought out for a one-on-one, and Mr. Diaz identified him as the one with the pistol who hit him and took his money. The third suspect brought out was also identified as one of the participants in the robbery by Mr. Diaz, but the fourth individual apprehended from the truck was not involved in the robbery according to Mr. Diaz.

During the examination of Officer Ybarra, the State asked if he had read the suspects

-2-

their rights. Officer Ybarra responded that he had, including the right to remain silent. The State then asked if he had gotten any verbal information from the individuals after reading them the rights, and again the answer was no. The State later asked about the suspects' silence in the following exchange with Officer Ybarra:

> The State: Was the driver cooperative once you actually apprehended him?
>
> The Officer: What do you mean by cooperative?
>
> The State: Did he comply with being arrested or did you have to use force?
>
> .    .    .
>
> The State: Defense counsel asked you a question did you go search Aguirre's apartment. Did you attempt to get information from the suspects at the scene?
>
> The Officer: Yes.
>
> The State: With regard to the items that were taken?
>
> The Officer: Yes.
>
> The State: And was anybody cooperative?
>
> The Officer: All four of them invoked their right to remain silent.

There were no objections made to this line of questioning by Appellant, but while discussing the jury charge, counsel asked that a separate instruction about the right to remain silent after arrest be included with the instruction of a defendant's right not to testify at trial.

Appellant was found guilty by the jury of aggravated robbery with a deadly weapon, and the court sentenced him to twenty-five years in the Institutional Division of the Texas Department of Criminal Justice. Appellant argues we lack jurisdiction to hear the case as a

-3-

transfer by order of the Supreme Court from the 4th District Court of Appeals, the State improperly commented on his right to remain silent, the trial court erred in denying his request for a special jury charge, the identification process was unnecessarily suggestive, and without the identification testimony, the evidence is factually insufficient.

In Issues One through Four, Appellant challenges this Court's jurisdiction to consider the appeal. In Issue One, Appellant argues the Texas Government Code provision providing for transfers between the intermediate courts violates the Equal Protection clause of the United States because it does not give proper effect to the voters of Texas who elect the justices of the intermediate appellate courts. In Issue Two, Appellant argues the order transferring his case to this Court is unconstitutional under the Texas Constitution, and is void from its inception due to a conflict between the Texas Constitution and Chapter 73 of the Texas Government Code. In Issue Three, Appellant argues the transfer order violates the Equal Protection and Due Course of law provisions of the Texas Constitution. In Issue Four, Appellant argues the transfer order is a void exercise of legislative authority over the judiciary, violating the Separation of Powers provision in Article 2, Section 1 of the Texas Constitution.

Today, we issued an opinion addressing these same issues in *Arocha v. State*, No. 08-07-00108-CR, (Tex.App.--El Paso June 30, 2009, no pet. h.). For the reasons stated in *Arocha*, we overrule Issues One through Four. *Id*.

In Issue Five, Appellant argues the State improperly commented on Mr. Pena's right to remain silent. However, Appellant did not object to this line of questioning or the comments made by Officer Ybarra. It is well established that almost every right, constitutional and statutory, may be waived by failing to object. *Smith v. State*, 721 S.W.2d 844, 855

-4-

(Tex.Crim.App. 1986); *see also Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App. 1996)(waiver of rights under Texas Constitution); *Curry v. State*, 910 S.W.2d 490, 497 (Tex.Crim.App. 1995)(waiver of rights under United States Constitution); *Wissinger v. State*, 702 S.W.2d 261, 265 (Tex.App.--Houston [1st Dist.] 1985, pet. ref'd)(waiver of due process claim). We find that the error, if any, was not preserved for our review. Issue Five is overruled.

In Issue Six, Appellant argues the trial court erred in denying the requested special jury charge regarding Mr. Pena's invocation of his right to silence. In reviewing charge error, we must first determine whether error exists. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Id*. The degree of harm necessary for reversal depends upon whether the error was preserved. *Almanza*, 686 S.W.2d at 171. Error properly preserved by an objection to the charge will require reversal as long as the error is not harmless. *Id*. This means, any harm is sufficient to require reversal. *Id*. Egregious harm must be shown for charge error that was not properly preserved. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex.Crim.App. 2006). Egregious harm is where the error affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id*.

Appellant did not object to the testimony when it occurred rather he waited until the charge conference to request the jury instruction. Having failed to object at the time the evidence was admitted, Appellant was not entitled to a jury instruction, and there was no error in the trial court's denial of the requested jury charge instruction. *See Hammock v. State*, 46 S.W.3d 889, 893-95 (Tex.Crim.App. 2001). Issue Six is overruled.

In Issue Seven, Appellant argues the show-up identification procedure was unnecessarily

suggestive and gave rise to a substantial likelihood of irreparable misidentification. Appellant filed a pretrial motion to suppress the in-court identification. At the hearing for the pretrial motions, the record indicates that the motion to suppress was going to be carried with the trial.

A pretrial motion to suppress evidence that has been overruled will generally preserve error as to that evidence, and no further objection must be made. *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex.Crim.App. 1986). A pretrial hearing on the motion to suppress was not held, and the trial court never ruled on the motion. Appellant was required to timely object to the evidence when presented at trial. *See Calloway v. State*, 743 S.W.2d 645, 649-50 (Tex.Crim.App. 1998). Texas courts stringently apply the contemporaneous objection rule in the context of improper identification. *Perry v. State*, 703 S.W.2d 668, 671 (Tex.Crim.App. 1986). Where there is no objection to an in-court identification or to testimony based on an impermissibly suggestive identification procedure, no error is preserved. *Id.*; *see also* TEX.R.APP.P. 33.1(a). Appellant's Issue Seven is overruled.

In Issue Eight, Appellant argues that without the identification testimony, the evidence is factually insufficient. In a factual sufficiency review, the evidence is reviewed in a neutral light rather than in the light most favorable to the verdict as in a legal sufficiency review. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). Evidence is factually insufficient if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts*, 220 S.W.2d at 524. The appellate court should be deferential to the jury's finding, but may second-guess to a limited degree with a high level of skepticism required before reversal can occur. *Id.*

Appellant's sole argument as to the factual insufficiency of the evidence is that the identification testimony should have been suppressed, and without the testimony the evidence is factually insufficient. As discussed above, the suppression motion was never ruled on and no error was preserved for review, as such, the testimony was admitted. Appellant was identified shortly after the robbery and in court by Mr. Diaz as having participated in the robbery. Appellant was found in a maroon truck with a white door, which that matched the description Mr. Diaz gave to the police of the suspects' vehicle. The evidence in favor of Appellant is that Mr. Diaz's description to the police did not exactly match what Appellant was wearing at the time. Also, no fingerprints belonging to Appellant were found at the crime scene. There were four men in the truck while only three committed the robbery, and neither the stolen property nor a gun was found in the truck or on the suspects. We find the evidence was factually sufficient. Issue Eight is overruled.

Having overruled all of Appellant's issues, we affirm his conviction.

June 30, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., Not Participating

-7-