

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-1283-12, PD-1582-12, PD-1583-12

### ANDRES NAVA and XIOMARA MENDEZ, Appellants

### v.

### THE STATE OF TEXAS

### ON APPELLANTS' PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**COCHRAN, J., filed a concurring opinion in which ALCALA, J., joined.**

I join Part II ("Jury Selection–Missing Record") of the majority opinion, and I concur in the judgment. I agree that any erroneous "intent to promote or assist" parties instruction given in this case did not cause appellants egregious harm. I cannot, however, agree with all of the majority's reasoning in Part I because I think that the jury charge should have said that the appellants acted with the "intent to promote or assist the commission of the offense of *murder*," not "*felony murder*."[1] There is no such thing as an intent to commit felony murder.

---

[1] See Majority op. at 12 (stating that the jury instruction "required the State to show that appellants intended to promote or assist the commission of felony murder before convicting of felony

As a general proposition, when the charged offense is felony murder, the only theory of party liability that should be submitted for accomplices is that of conspiracy liability under Section 7.02(b).  Normally, the "intent to promote or assist" theory of party liability under Section 7.02(a)(2) does not apply to an unintentional killing under the felony-murder rule. It is most unusual (though not impossible) for an accomplice to the offense of felony murder to intend to promote or assist in the commission of murder while the person who actually does the killing does not intend to commit a murder.  In such a case, the State must prove that the accomplice has a greater *mens rea* than the actual killer who just intended to commit a felony, such as theft, and then, during that theft, committed an act clearly dangerous to human life that did cause a death.

This is the unusual case in which the jury could have found that one of the accomplices, Andres Nava, intended for the shooter, Roberto Carrillo, to kill the undercover officer when he shouted, "¡Tírale!" ("Shoot him!") even though the State was not required to prove that Carrillo himself intended to cause the undercover officer's death.  Although there is no evidence that would support a finding that the other accomplice, Xiomara Mendez, intended that Carrillo kill the undercover officer, I agree that she, like Nava, did not suffer egregious harm by the ambiguous wording of the jury instructions concerning party liability under Section 7.02(a)(2).

The present problem was anticipated and resolved by the drafters of the 1970

_____

murder under this theory of party liability.").

Proposed Revision to the Texas Penal Code.  As a part of Section 19.02, our murder statute, the drafters proposed a subsection (4) that explicitly addressed party liability in the context of felony murder.  That provision read as follows:

> (4)     he is a party to a felony and another party to the felony commits murder as defined in Subdivision (3) [felony murder], and the actor:
>
> (A)     solicits, directs, aids or attempts to aid the homicidal act; or
> (B)     is armed with a deadly weapon; or
> (C)     is reckless with regard to whether the other party is armed with a deadly weapon; or
> (D)     is reckless with regard to whether the other party intends to commit an act clearly dangerous to human life.[2]

The Committee Comment to this Section (4) noted that this was "a special theory of complicity" by which one felon may be held responsible for his cohort's unintended felony murder, because "[t]he general complicity test, Section 7.02, would not impose responsibility on the nonperpetrating felon unless he acted with intent to promote or assist the killing."[3]

The Committee thought that the four different actions (aiding in the homicidal act, being

---

[2] STATE BAR COMMITTEE ON REVISION OF THE PENAL CODE, PROPOSED PENAL CODE § 19.02(4), at 146 (1970).

[3] *Id.* Committee Comment to Section 19.02, at 148.  Proposed Section 7.02 ("Criminal Responsibility for Conduct of Another") contained substantially the same subsection (a) as it does today, but subsection (b) read, "A coconspirator is not a party to an offense committed by the conduct of another unless he is criminally responsible for the offense under Subsection (a)."  The Committee stated that it included Subsection (b) "to distinguish clearly between complicity as a basis of criminal responsibility and the inchoate offense of criminal conspiracy."  Committee Comment to Section 7.02, at 51.  The Committee acknowledged that then-present Texas law was that a co-conspirator was liable for any reasonably foreseeable offense committed by his coconspirators which "follows incidentally in the execution of the common design[.]" *Id.*  The Committee disapproved of such far-reaching liability and intended to eliminate it in the Proposed Penal Code.  But it did note that "[a] cofelon's criminal responsibility for felony murder is specially dealt with in the murder section, 19.02, and explained in the comment to that section." *Id.* at 52.

reckless about the possibility of a death occurring, being armed with a weapon, or being reckless about the killer having a deadly weapon) justified the cofelon's vicarious liability "because of the great danger accompanying most violent felony commissions and the absence of social utility in this type of conduct."[4]

However, when the revised Penal Code was actually enacted in 1974, the special cofelon criminal responsibility provisions for felony murder in 19.02(4) were simplified and turned into a general conspiratorial liability theory in Section 7.02(b). The Practice Commentary to the 1974 Code explained that its drafters had restored the

> constructive malice doctrine to punish more severely a homicide growing out of a conspiracy to commit any felony. Section 7.02(b) [an entirely different provision than that proposed in the 1970 Code] makes cofelons vicariously responsible for all felonies committed by any one of them, so long as the felony actually committed was committed in furtherance of the object felony, if the felony actually committed was one that *should* have been anticipated as a result of committing the object felony.[5]

The 1974 Code painted the conspiracy concept with a broad brush and took the type of vicarious responsibility that once applied only to felony-murder cofelons and applied it to the unintended commission of *any* felony.[6] The Practice Commentary to Section 7.02 took a dim

---

[4] *Id.* Committee Comment to Section 19.02, at 149. The Committee stated that the then-current Texas law upheld murder convictions in these circumstances "on a theory of complicity to the effect that all parties to a felony are responsible for conduct that was or *ought* to have been foreseen by the parties as a probable consequence of the intended felony." *Id.* (emphasis in original). But, the Committee noted that this former law, a simple negligence standard for vicarious liability, was rejected both in the complicity statute of Section 7.02 and in the felony-murder context as well. *Id.*

[5] TEX. PENAL CODE § 19.02, Practice Commentary at 10 (Vernon's 1974).

[6] *Id.*

view of subsection (b) which "codifies a vicarious responsibility doctrine of the common law that is foreign to a major objective of this code: the requirement of individual culpability as a prerequisite to imposition of criminal responsibility."[7]  But that is the law that the Legislature adopted and it has not been amended since.

Thus, by charging the jury with both theories of criminal responsibility for Carrillo's act of shooting and killing Officer Canales, the State took on the burden of proving either

(1)    appellants, Nava and Mendez, intended "to promote or assist the commission of the offense of murder" . . . and they solicited, encouraged, directed, aided, or attempted to aid "Roberto Carrillo to commit the offense of murder"; or

(2)    appellants, Nava and Mendez, along with Roberto Carrillo, "entered into an agreement to commit felony theft," . . . and "while in the course of committing such theft, Roberto Carrillo committed an act clearly dangerous to human life that caused the death of" Officer Canales, and that the [act][8] causing Officer Canales's death was committed in furtherance of the conspiracy and was an [act] that [appellants] should have anticipated as a result of the conspiracy."

Under the first prong, the State was required to prove that appellants had the intent to have Carrillo commit the offense of murder and that they assisted him to commit the offense of murder, even though appellants were not charged with murder, only felony-murder.

Appellants are correct that the jury charge is ambiguous because the "intent to promote" party liability application instruction simply says that the jury must find that each

---

[7] *Id.* § 7.02, Practice Commentary at 135-36.

[8] The jury charge actually reads "and that the *murder* of H. Canales was committed in furtherance of the conspiracy and was an *offense* that the defendant should have anticipated as a result of the conspiracy[,]" when it should have read "and that the *act* [or the clearly dangerous act] that caused the death of H. Canales was committed in furtherance of the conspiracy and was an *act* that the defendant should have anticipated as a result of the conspiracy."

appellant intended to assist the commission of "the offense, if any" and that they solicited, encouraged, directed, aided or attempted to aid Roberto Carrillo to commit "the offense" without specifying what offense the instruction was referring to.  But, precisely for the reasons given by the majority, I agree that this instruction, though ambiguous on its face, did not cause appellants egregious harm under *Almanza*.[9]

Filed: December 18, 2013
Publish

---

[9] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).