**Opinion filed July 24, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00192-CR
_____

**FERNANDO LOPEZ RIVERA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 22nd District Court**

**Hays County, Texas**

**Trial Court Cause No. 11-0795**

### M E M O R A N D U M   O P I N I O N

The jury convicted Fernando Lopez Rivera of the offense of possession of 2,000 pounds or less but more than fifty pounds of marihuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West 2010). The trial court assessed Appellant's punishment at imprisonment for twelve years and sentenced him

accordingly. In one point of error on appeal, Appellant alleges jury charge error. We affirm.

Appellant was arrested after a controlled delivery of narcotics that involved a joint operation conducted by the Drug Enforcement Administration (DEA) and several agencies in Texas. Detective Gerardo Fuentes of the Eagle Pass Police Department worked undercover as a drug trafficker as part of his assignment to the Narcotics DEA Task Force. In his undercover role, Detective Fuentes was hired by a Mexican drug dealer to recruit a driver to transport large quantities of marihuana. Detective Fuentes enlisted Detective Ricardo Riojas to deliver 261 pounds of marihuana to San Marcos, Texas. Detective Riojas was attached to a DEA Task Force from the Del Rio Police Department. Detective Riojas was to deliver the drugs to someone at a location arranged by Detective Fuentes. Detective Jayson Cormier of the San Marcos Police Department, and attached to the Hays County Narcotics Task Force, flew a helicopter and was to follow the suspects during and after the transaction. The suspects who were to take delivery of the drugs would be driving a gray Ford F-150 with plywood in the bed of the pickup.

When the suspect vehicle arrived at the designated location, Pedro Alvarado Martinez was driving, and Appellant was the passenger. Martinez drove up and down the aisles of the parking lot, parked, left, drove around, and parked in different places; drug traffickers do that to determine whether someone is following them. Before the meeting, Detective Fuentes received a call from one of the suspects who said that they needed to change location because there were police in the area. Detective Fuentes did not know to whom he spoke to on the phone.

When Detective Riojas arrived at the new location, Martinez told Detective Riojas to follow him across the street. They parked, and the three men exited the

2

vehicles. Martinez asked Detective Riojas if he had "the stuff," and Detective Riojas told him that it was in his pickup. Appellant began transferring the duffel bags to the other vehicle. Detective Riojas asked about the money, and he said that Appellant and Martinez were stunned when he told them he needed $5,000. Martinez made a phone call, and Detective Riojas called Detective Fuentes, who instructed him not to hand over the drugs until he received the money. After his phone call, Martinez told Detective Riojas to follow them to get the money, but Detective Riojas refused and said that he would meet them later when they had the money. Appellant returned the duffle bag that he had unloaded to Detective Riojas's vehicle, and they left.

Detective Riojas met Appellant and Martinez at an apartment complex about thirty minutes later. Detective Riojas agreed that Martinez could pay later, and the three men transferred the marihuana into the bed of Martinez's pickup. The drugs were inside five green duffel bags that weighed approximately fifty to sixty pounds each. Detective Riojas said that there was a very strong odor of marihuana in his vehicle after transporting the bags. Martinez and Appellant left, but they stopped about a mile away to move the duffel bags into the backseat of the pickup. Martinez covered the bags with a tarp and began driving again.

Soon thereafter, Detective Jay Wheeler of the Hays County Narcotics Task Force conducted a stop based on a defective taillight and an obscured license plate. Detective Wheeler approached the pickup and asked Martinez and Appellant for identification. Martinez produced a Mexican driver's license. Appellant exited the pickup and walked to the rear of the pickup. Detective Wheeler conducted a pat-down search of Appellant for officer safety, and when he put Appellant's hands behind his back, Martinez fled the scene in his pickup. Another detective waited with Appellant on the side of the road while Detective Wheeler followed Martinez. Martinez abandoned his pickup and proceeded on foot, but he was eventually

3

apprehended.  When Detective Wheeler approached the vehicle after the foot chase, he could smell an odor of fresh marihuana coming from the open window.

Appellant and Martinez were both arrested and placed in the backseat of a police car.  Their conversation was recorded and later translated from Spanish to English for trial.  Martinez commented that the situation "was a well set f--k up to us," and Appellant told him that it was no big deal, that they can take it, and that there was nothing they could do about it now but to "take our lumps."  Appellant told Martinez that he was going to say that he knew nothing about this, and Martinez agreed.  Appellant also said that they knew the answers to the questions they would be asked and then asked Martinez if he told the officers that his name was Jesus.  Martinez said, "No.  Pedro Loran."  Appellant testified that Martinez went by both names and that Appellant was just clarifying which name he had used.

After searching the pickup, officers found several knives, a machete, and the five duffel bags containing 261 pounds of marihuana.  Martinez pleaded guilty in exchange for a four-year sentence, and he testified at Appellant's trial.  Martinez said that he and Appellant grew up in neighboring towns in Mexico and that they both did construction work in the United States.  On the day of their arrest, Martinez had asked Appellant if he wanted to ride along to pick up lunch for the other workers.  While they were gone, Martinez received an unexpected phone call instructing him to pick up a shipment of marihuana in San Marcos.  Appellant agreed to ride to San Marcos so that Martinez could get "some packages from Mexico," but Martinez said that he never told Appellant that they were picking up marihuana.  Martinez told the jury that he first told Appellant about the drugs as they were being pulled over for the traffic stop.

Appellant testified that Martinez had family in Mexico and that he thought they had sent a package of things like candy and cheese.  Appellant requested, and

4

the jury received, a general instruction on the defense of mistake of fact, but the trial court did not apply the law to the facts or instruct the jury that it must acquit Appellant if it concluded that he had a mistaken but reasonable belief that negated the requisite mental state. After a general instruction on mistake of fact was added to the jury charge, Appellant affirmatively stated that he had "[n]o objections" to the charge. Appellant did not request that the judge apply the law of mistake of fact to the facts of the case. The jury found Appellant guilty of possessing 2,000 pounds or less but more than fifty pounds of marihuana.

In his sole point of error, Appellant argues that the trial court erred when it failed to apply the law of mistake of fact in the application paragraph. When reviewing a claim of jury charge error, the appellate court must first determine whether the charge was erroneous. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If there was an error in the charge, the court must then determine whether the error was harmful to the accused. *Olivas*, 202 S.W.3d at 143–44; *Almanza*, 686 S.W.2d at 171.

It is well settled that the trial court is required to instruct the jury about the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "This is true regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence." *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). "If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE ANN. § 2.03(d) (West 2011).

The trial court instructed the jury that "[i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his

5

mistaken belief negated the kind of culpability required for commission of the offense." The trial court included the following application paragraph:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, FERNANDO LOPEZ RIVERA, on or about the 28th day of July, 2011, in the County of Hays and State of Texas, as alleged in the indictment, did then and there knowingly and intentionally possess a useable quantity of marijuana in the amount of 2000 pounds or less but more than fifty pounds, you will find the defendant guilty . . . and say by your verdict "Guilty," but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant, and say by your verdict, "Not Guilty[.]"

Because the trial court failed to apply the law of mistake of fact to the facts of the case and failed to instruct the jury that Appellant must be acquitted if it had a reasonable doubt on the issue of mistake of fact, there was error in the jury charge. *See Beggs v. State*, 597 S.W.2d 375, 378–80 (Tex. Crim. App. [Panel Op.] 1980).

Because Appellant did not object to the charge at trial, we will reverse only upon a showing that the error resulted in egregious harm. *Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012). An error in the charge is egregious if it goes "to the very basis of the case," deprives a defendant of a "valuable right," or "vitally affect[s] his defensive theory." *Almanza*, 686 S.W.2d at 172. When assessing harm, we consider the charge, the evidence, the arguments of counsel, and any other relevant information revealed by the record. *Id.* at 171.

The State argues that the error was harmless because the jury was instructed about the mistake-of-fact defense, and the only issue for the jury to decide was whether it believed Appellant's testimony. Appellant argues that the error was egregious because the jurors were not instructed about "what to do if they had a reasonable doubt about the defense as it related to the evidence in the case" and because it vitally affected "the jury's comprehension of how that defense of

6

mistake of fact related to the State's burden of proof and the concept of 'reasonable doubt.'"

Clearly, Appellant relied on mistake of fact as a defensive theory at trial. Appellant offered evidence that he mistakenly believed that the duffel bags contained candies or cheeses from Mexico, and he had an innocent explanation for each piece of evidence against him. During its closing argument, the State dissected each explanation and argued that it was not reasonable to ride from Austin to San Marcos, go to various locations, move the heavy bags, smell the strong odor, and pay $5,000 for shipping cheese and candies without ever asking questions. In his closing argument, Appellant reasoned that people's experiences shape their perception and argued that Appellant did not suspect that Martinez was trafficking drugs because Appellant was honest and did not know anything about drugs. Appellant argued that he was not the focus of the investigation and that all the phone calls went through Martinez's phone. Appellant contended that it was not his job to look inside someone else's bags and that he had no reason to suspect illegal drugs were involved until it was too late. The "cops" knew what marihuana smelled like because of their experiences, but Appellant had never smelled marihuana prior to that day. In closing, Appellant said, "[F]or those of you who, you know, may be a bit squeamish, I don't know. I don't know. It looks bad, but-- but there's really not the evidence there, and I just don't know what to believe, well, it's easy. That's reasonable doubt."

We find nothing from our review of the record to indicate that the jury was misinformed or uninformed about the law-of-mistake of fact. Considering the general instruction on the law of mistake of fact that was given to the jury and Appellant's jury argument, we conclude that the trial court's failure to apply the mistake-of-fact defense in the application paragraph did not cause egregious harm to Appellant. *See Barrera v. State*, 10 S.W.3d 743, 745–46 (Tex. App.—Corpus

7

Christi 2000, no pet.); *see also Boyd v. State*, No. 11-03-00384-CR, 2005 WL 2036497, at *6–7 (Tex. App.—Eastland Aug. 25, 2005, no pet.) (not designated for publication).  Appellant's sole point of error is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


July 24, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.